D. LAFAYETTE BARTLETT, Survivor, &c., Respondent, *v.* ELI HOPPOCK and TUNIS VAN BRUNT, Appellants.

A warranty of fitness of an article for a specific purpose cannot be implied from a knowledge, on the part of the seller, that the article is intended for such a purpose.

Where the vendor of an article is not the manufacturer thereof, the above rule of the civil law will not apply: Per POTTER, J.

THIS action was brought in the New York Common Pleas, to recover for a balance due on the sale of a quantity of live hogs, sold by plaintiffs to defendants. The defense is, that the plaintiffs warranted the hogs to be corn fed hogs, and suitable for the New York market; that on the contrary, that many of them were not corn fed hogs, and that they were unfit for market. Also, a small counterclaim which was allowed, and about which no question arises. There was a verdict for the plaintiffs for $1,368.25, the full amount of the claim (less the counterclaim), for which judgment was entered. There was an appeal to the General Term of that court, where the judgment was affirmed, and from that, an appeal to this court. There were no exceptions taken to the charge of the judge on the trial. All the questions that arise in the case are upon exceptions to the admission or to the exclusion of evidence. The hogs belonged to one Sailer, a drover and stock dealer, and the plaintiffs were agents or brokers, who sold the hogs to one Dorman, who purchased as agent for the defendants. All other facts necessary to the decision of the case, will appear in the opinion.

*E. P. Wheeler*, for the plaintiffs.

*C. W. Sandford*, for the defendants.

POTTER, J. If the rulings of the judge on the trial were correct, then, whether or not there was a warranty on the sale of the hogs in question to the defendants, is settled by the verdict of the jury to whom that question was submitted, and whose province it was to decide it. It is urged that by

the improper exclusion of certain evidence by the judge on the trial which was offered by the defendants, and by the improper admission of certain other evidence offered by the plaintiffs, the proper presentation of the evidence of warranty was prevented. The averment of the terms of the warranty, in the answer of the defendants, is, "that the hogs were hard or corn fed, and were suitable and proper for the New York city market." It can hardly be seriously urged, I think, that so much of this claimed warranty, as is in the following words: "that they were suitable and proper for the New York city market," if used by an Ohio drover, to an experienced New York city broker of the same article, who may be presumed best to know the wants of the city in that regard, was understood by the latter to be a part of the warranty. It would be but the expression of an opinion upon a subject upon which the purchaser had much the better opportunity of knowledge; and were it otherwise it would not constitute a warranty in law. The assertion that "they were hard or corn fed hogs," might constitute a warranty, as it was shown that hogs fed on corn are known in the trade as "hard fed hogs," and are superior in value, and command a higher price in market, than such as are distinguished as "scalawags," "shackers," "soft hogs," fed upon mast, such as beech nuts and acorns; or "slop fed hogs," fattened at a still.

Assuming, for the present, that a representation that the hogs were "hard or corn fed" constitutes a warranty that the hogs were of that character, and that experienced dealers are unable to tell the difference between a "mast fed" and a "corn fed" hog, on the hoof, before it is killed, the next inquiry is, whether there was any evidence given, or offered and excluded, that tended to prove the warranty set up. Dorman, the agent of the defendants in making the purchase, the only witness of the defendants by whom a warranty was attempted to be proved, entirely fails to prove any express warranty made by Miles, one of the plaintiffs, of whom he purchased the hogs, and with whom the whole negotiation was made. Dorman was asked, as a witness, what represent-

ations Miles made, while negotiating for the hogs? He answers: "He represented the hogs to be first quality hogs, and the highest priced hogs that were upon the market." "I spoke to Mr. Miles as to their thinness, also about their shrinking; as a lean hog shrinks more than a fat one. 'You know as well as I do,' said he, 'that they will bring the highest price of any hogs that come to the market;' that they were the best hogs to sell in the market." "No agreement was made about corn fed hogs; he only said they were the best hogs, and best suited to the market." "I don't remember more than I have stated; I cannot tell the whole conversation; he talked about the hogs being thin, &c.; he claimed that these hogs were that day worth more than thick ones, net weight; gross weight they were not." "I could not discover that they were anything different from what Miles represented." If there is a warranty in the representation above proved, it must be *implied* from the representation that they were "*first quality hogs*," and that they were the "highest priced hogs that were upon the market;" and this must be *implied* from what was said to an experienced buyer, who saw they were thin and small, not averaging over 115 pounds, and who knew that they came from Ohio; and who, as well as the seller, must be presumed to know the demands, in size and quality, of hogs for the New York market, and what sizes and quality of hogs were the highest priced in the market. If a warranty may be implied from such a representation, made under such circumstances to such a party, it was to be implied and found by the jury. It was not a warranty, as matter of law. In such case, "*caveat emptor*" is the maxim that applies. (*Bierne* v. *Dord*, 1 Seld., 98, and cases cited.) No express warranty was proved; and the purchaser takes the property at his own risk as to its quality and condition. (*Milburn* v. *Belloni*, 34 Barb., 609 ; *Moses* v. *Mead*, 1 Denio, 378, 385, per BRONSON, J.; *Seixas* v. *Woods*, 2 Caines, 48; *Sweet* v. *Colgate*, 20 Johns., 196.) Nor would the plaintiff be liable upon such a representation as is proved in this case, unless it be averred and proved that the vendor knew the representation to be false. (*Carley* v. *Wilkins*, 6 Barb., 557.)

This was not done in this case. In this connection, it may be remarked, also, that the testimony of Dorman, the witness, in relation to matters testified to by him, was directly contradicted, and direct proof was given that Dorman purchased the hogs, with full and complete knowledge that they were "soft hogs," or "shackers," raised in the woods on beech nuts.

I proceed, then, to examine the rulings of the judge on the trial, that were excepted to, in their order. The plaintiff, on his cross-examination by the defendants, was asked three questions, which were objected to and ruled out by the judge, as follows:

1. "What was the price of sound hogs for city use that day, the 6th February?" No point being presented on the brief as to this ruling, it is regarded as waived: its materiality, at all events, is not seen.

2. "Did you know that these hogs were sold to be slaughtered for city use, and to be sent, when slaughtered, to Mr. Otis?"

3. "Did you direct Mr. Searing to send these hogs to Mr. Otis?"

The first of these two latter questions relates to the knowledge of the plaintiff, at a time before he made his contract of sale, as to what disposition the purchaser intended to make of the hogs. The second question relates to what it was claimed was said by the plaintiff, after the contract was consummated, in relation to a negotiation for a settlement. I have been unable to see any bearing which either of these questions have upon the issues then to be tried, and have failed to find any error in excluding this evidence.

The three following questions were put to Mr. Dorman, the defendants' agent in the purchase of the hogs in question, and also ruled out by the judge:

1. "What did Mr. Otis say in the presence of Mr. Miles during the negotiations, as respects these hogs being slaughtered for sale by him in the market?"

2. "What was Mr. Otis' business?"

3. "Is Mr. Otis engaged in selling pork as provisions in the market?"

For the same reasons that apply to the previous questions, no error is seen in excluding the testimony called for. It is not shown they have any material bearing upon the issues to be tried. All the preceding questions which we have noticed, and the exceptions thereto, seem to be based upon the theory that a warranty of fitness of an article for a specific purpose, may be implied, from the knowledge on the part of the seller, that the article is intended for such specific purpose. This is a doctrine of the civil law which has been attempted, but unsuccessfully, to be made a part of our common law. The authorities we have already cited clearly hold, that where the vendor of the article is not the manufacturer of the article sold, and in cases where the vendee, as in this case, has equal knowledge and equal opportunities of knowledge of the character or quality of the article sold with the vendor, the vendor is only liable upon an express warranty.

The next four questions put by the defendant to his witnesses, and ruled out by the judge on objection, are as follows:

1. "What was the quality of the hogs after they were slaughtered?"

2. "What took place between yourself and the plaintiffs, or either of them, when you called upon them to inform them that a part of their hogs were soft?"

The judge qualified this question by stating to the witness that if any part of the conversation related to what took place at the time of the sale, or during the negotiation which led to it, you can state it. The witness answered, "Nothing took place." The answer of the witness of course puts an end to the effect of this exception.

3. "Did Miles and Bartlett, or either of them, when you called upon them, give you any directions what to do with the hogs?"

4. "What was done with the hogs after you saw Miles and Bartlett?"

The first, third and fourth of these questions relate to matters that occurred after the sale, not relating to it or to the

negotiation leading to it, nor could the answers explain or tend to explain anything testified to and called out by either side. In the absence of the evidence of a warranty, it is difficult to discover the materiality of the testimony called for. Its materiality is not made to appear by the brief and argument. Its exclusion is not therefore shown to be error.

The next exception was to the ruling out of the question put by the defendant to one of his witnesses, as follows:

"What do you mean by the usual warranty?"

This question was quite immaterial, besides it called for the witness' definition of terms that he had not used. There was no issue as to what was the "usual warranty." The exclusion of this evidence was not error.

The next question ruled out was, "What took place between you (the witness) and Miles and Bartlett when they came and looked at the pork at your slaughter house?"

This was so qualified by the judge as to admit anything that was said about the bargain, and excluded what it called for otherwise.

The defendants have failed to show how this exclusion could have injuriously affected them. The next question was:

"After the sale of the pork, did you have any conversation on the subject with Miles & Bartlett, or either of them?"

This was also modified by the judge so as to admit anything that was said about the sale, or the negotiations which led to it.

The witness answered, "At the corn exchange, Bartlett came to me and asked me if I had the account of sales of those hogs that I sold in the market; that the owner of the hogs was then in the city, and he had been selling another lot of hogs for him, and he wanted those sales before he paid the man, in order to settle with him."

On motion of plaintiffs' counsel, this answer was struck out, and defendants excepted.

This answer did not come within the rule allowed by the judge, and there was nothing material to the issues to be tried contained in the answer. It was properly stricken out.

The next objection taken by the defendants is to a ruling of the judge on the admission of evidence. The plaintiffs asked a witness, " What was said at the time, in the presence of Mr. Dorman, about this lot of hogs ?" The time referred to in this question was about the time Dorman, defendants' agent, had agreed to purchase, and while he was yet in the yard where the hogs were, and while they were being weighed; and the inquiry was as to what third persons said to him at that time. And the witness answered, " Mr. Phelps, a drover, was rallying Dorman why he should buy such a set of ' scallawags' at the price of corn hogs. Dorman said they were what the market wanted, and he had sold them, and was going to make money out of them, and did not care what they were." " Phelps said they were nothing but beech nut hogs; Dorman said, ' that's *my* business.' This conversation continued during the whole of the weighing, perhaps ten minutes."

From this conversation, it appears that, before the bargain was consummated, while the hogs were being weighed to determine the price, and at a time before the bargain was binding upon Dorman or the defendants, Dorman fully knew and understood the character of the hogs he was buying. It was, therefore, material to meet the question of warranty, express or implied, as well as to contradict Dorman's testimony. The evidence so obtained was directly connected with the principal issue to be tried, and the facts so related to the point of time of making the contract, that it may be regarded as part of the *res gestæ.* Its admission depended upon a question of sound discretion. Whether admitted or rejected, the decision, I think, would not have been error. (1 Greenl. Ev., § 108.) A like question, and like decision of the judge, occurred in the testimony of Cushman, a witness for the plaintiff during the time the hogs were being weighed. A like question and a like decision occurred after the plaintiff Miles was again recalled, and was testifying to a conversation in the presence of Dorman, which occurred while the hogs in question were being weighed. Dorman was told " they were ' shackers,' or ' beech nut hogs,' and Mr. Sailer, the

drover and owner of them, said they had had no corn, and came out of the woods." This conversation was objected to by defendants, and admitted, and I think properly, by the judge.

We have thus severally examined each of the objections of the defendants to the rulings of the judge on the trial. We have been unable to detect any such error committed as to demand a new trial. We think the judgment should be affirmed.

DAVIES, J. The action was brought to recover the amount of a bill for certain hogs, sold and delivered by plaintiffs to defendants. The only defense interposed was, that in the sale the plaintiffs warranted the hogs "to be hard or corn fed hogs, and suitable for the New York city market." The jury found a verdict for the plaintiffs on this issue, and an examination of the testimony shows that the alleged warranty is wholly unsupported by any evidence. Nay, it is expressly negatived by the only witness the defendants relied upon to prove it, Dorman, their agent, who purchased the hogs of the plaintiffs for the defendants.

If there has been no error committed in the admission or exclusion of evidence, no ground is presented for disturbing the judgment. It is claimed on the part of the defendants, that the court erred in overruling testimony offered by defendants to show the object for which they purchased the hogs. This was unquestionably correct. Their purpose, object or intent in making the purchase in no way tended to make out a warranty on the part of the plaintiffs in the sale. The question was, what the plaintiffs said or did, and it was of no moment to show what the object of the defendants was in making the purchase, or whether or not the plaintiffs had any knowledge of such object. A warranty on their part could not be established by such evidence.

So it was entirely immaterial to ascertain the quality of the hogs after they were slaughtered. If the warranty had been proven, then and then only was it material to inquire into the quality of the hogs after slaughtering to show that

there had been a breach of the warranty. But as there was an entire failure to make out the allegation of the answer, that the hogs had been warranted to be hard or corn fed hogs, it was of no moment that they proved after slaughtering to be soft hogs, and not corn fed.

It is also objected that the testimony offered by defendants of a conversation between the parties, after the hogs were ascertained to be soft, was improperly excluded. The judge allowed the witness to state any conversation which related to what took place at the time of the sale, or during the negotiation which led to it. Anything which occurred subsequent was wholly immaterial. If there was no warranty, it had no relevancy, and what occurred after the sale and delivery had no tendency to show that a warranty had been given at the time of the sale. All conversation which related to what took place at the sale, or during the negotiation which led to it, was pertinent on the issue whether or not there was a warranty, and any other conversation was irrelevant.

It was of no importance to ascertain what was the usual warranty on the sale of hogs. It had no tendency to solve the inquiry whether or not there was a warranty upon this particular sale of hogs. The usual warranty on other sales was entirely irrelevant, and properly excluded. These suggestions apply to other offers of the defendants to put in evidence other conversations of the parties about the hogs, not relating to the question of warranty. It was of no moment what was the condition of the hogs, hard or soft, or whether or not the defendants only intended to buy hard hogs, if there was no warranty that the hogs sold were of the particular quality claimed.

It was of no importance also that the court admitted conversations between Dorman, the defendants' agent, and other persons after the sale, tending to show Dorman's knowledge of the actual condition of the hogs, upon the question of warranty or no warranty. But such conversations and knowledge of Dorman were important as tending to impeach his credibility, and in this view were clearly admissible. He

had testified that he would not have bought the hogs if one of the plaintiffs, Miles, had said they were trash or scallawags; that he had heard no comment about the hogs from any western drover. The testimony, therefore, as to such conversations, was properly admitted.

I see no force in any of the exceptions taken by the defendants to the admission or exclusion of testimony, and as no other question is presented for our consideration, the judgment appealed from must be affirmed.

All the judges concurring,

Judgment affirmed.