## DOUNCE v. DOW.

*Warranty — what does not constitute — Sale — when purchaser of personal property may not rescind.*

Defendants, who were manufacturers of agricultural implements, applied to plaintiff, a dealer in iron, to sell them ten tons of "double X pipe iron." Plaintiff agreed to sell such iron at a specified price, and afterward obtained some iron, which he shipped to defendants as double X pipe iron. Defendants gave their note for the price. The quality of the iron could be determined by testing, but without testing defendants mixed five tons of it with other iron and made castings therefrom. After the castings were made, the iron was found to be worthless. Defendants thereupon notified plaintiff that they rescinded the contract, and offered to return the five tons unused. Plaintiff knew the purpose for which defendants bought the iron. *Held,* (1) that there was no warranty of the quality of the iron by plaintiff, express or implied; (2) that defendants, having used the iron without testing its quality, could not rescind the contract on the ground that the iron was worthless; and (3) that they were liable to plaintiff upon the note.

MOTION by defendants for a new trial after a verdict in favor of plaintiff, directed by the court.

The action was brought by William J. Dounce against Benjamin F. Dow and others upon a promissory note made by defendants. Sufficient facts appear in the opinion.

*J. R. Ward,* for plaintiff.

*Adams & Strang,* for defendants. There was, if not an express, an implied warranty. *Hoe* v. *Sanborn,* 21 N. Y. 552; *Passinger* v.

*Thorburn,* 34 id. 634; S. C., 35 Barb. 17; *Beals* v. *Olmstead,* 24 Vt. 114; Story on Cont., § 836; Sedg. on Dam. (4th ed.) 333, note; 2 Kent's Com. (10th ed.) 660; *Jones* v. *Bright,* 5 Bing. 533; *Brown* v. *Edgington,* 2 Man. & Gr. 371. The jury would have been authorized to find an express warranty. 1 Pars. on Cont. 581, 583; *Hastings* v. *Loering,* 2 Pick. 214; Comyn on Cont. (4th Am. ed.) 147; *Cramer* v. *Bradshaw,* 10 Johns. 481. Also cited *Mullen* v. *Eno,* 14 N. Y. 597; *Renaud* v. *Peck,* 2 Hilt. 137; *Day* v. *Pool,* 52 N. Y. 416; *Sweet* v. *Bradley,* 24 Barb. 549.

Present — MULLIN, P. J., E. DARWIN SMITH and GILBERT, JJ.

MULLIN, P. J. The action is on a note of $435.16, made by defendants to the order of the plaintiff, payable at four months at the Genesee Valley National Bank.

The defense is that the note was given for ten tons of double X pipe iron, which defendants bought of plaintiff, to be used in making castings for agricultural implements, in the manufacture of which defendants were engaged at Fowlerville, in this State. The iron was shipped to and received by the defendants, and, without making any test or examination of it, it was mixed with other varieties of pig iron and converted into wheels and other parts of agricultural implements. The iron so purchased of plaintiff was so rotten and worthless that the castings made from it were valueless, and the defendants were put to great expense in the effort to use said iron, and to great loss in utter worthlessness of the machinery made therefrom. This loss and expense they insist upon by way of counter-claim to the note.

It appeared upon the trial that the plaintiff was a dealer in pig metals at Elmira, and the defendants were, and had for a number of years been, manufacturers of castings for agricultural implements at Fowlerville. Prior to the 27th of January, 1869, several letters had passed between the parties as to pig iron of various sorts; in one of which letters defendants ask plaintiff the price for double X pipe iron. On that day plaintiff replied he had no double X pipe on hand, but would soon, which he could sell for $42.50 per ton at Elmira.

On the 28th of January plaintiff wrote to defendants a letter, in which he acknowledged the receipt of a letter from them of the 25th, and told them he could supply them double X pipe through the season, but could not fix any certain price for the same. He

Dounce v. Dow.

said he could sell double X pipe then at $42.50, and would sell all the season that brand at the lowest figure he could; that the furnace had such a demand for that description of iron that they sold it at about $2.50 to $3.00 higher than the average market price. He also gave the time and manner in which he required payment. On the 29th of January defendants wrote to the plaintiff to enter their order for ten tons of double X pipe iron, and send to them at Caledonia as soon as received. On the 12th of February, 1869, plaintiff shipped to defendants, as directed, ten tons double X pipe and pig metal, addressed to them at Fowlerville. On or about the 15th of February and before the iron was received, defendants sent to plaintiff their note for the amount of the bill. It did not conform entirely to the terms of sale, and plaintiff returned it to defendants, who corrected the error and returned the same to plaintiff. A few days thereafter the iron was received by defendants.

B. F. Dow, one of the defendants, had the direction of the preparation of the various kinds of iron which should be combined together to make the quality of castings defendants desired to manufacture, and he gave his directions to an employee of his firm as to the quantity of iron in question which was to be used. His instructions were followed. When they came to use the castings, thus made, they were found to be brittle and worthless, and on examination the double X pipe iron was found to be brittle, rotten and worthless.

Five tons of the double X iron were used before its worthlessness was discovered, and then defendants wrote to plaintiff complaining of the injury done to them by reason of the bad quality of the iron sold to them, refusing to use any more of it and offering to return what remained unused.

The iron in question was manufactured at a furnace in Pennsylvania and purchased by plaintiff to be sold by him.

The quality of pig iron cannot be ascertained by merely examining it externally. There are two tests by which to determine the quality. One is melting it; the other, breaking the pig so that the internal surface may be examined, and from the appearance of that surface a person acquainted with pig iron could determine its quality quite accurately, without using it. The iron sent to defendants was not broken and examined and the effect of it upon the castings was not ascertained for several weeks, as defendants cast a large quantity before they prepared them for use.

The witness Dow testified that he did not think the iron sent to his firm was double X pipe iron. The plaintiff testified that it was, and the other witnesses called to speak as to its quality seem to consider it as double X pipe, but of very bad quality.

The court directed a verdict for the plaintiff, and that the motion for a new trial be heard in the first instance in the general term.

It is important to ascertain, in the outset, whether the sale of the iron was an executed or an executory sale. The plaintiff, when defendants' order was received, did not have any double X pipe iron on hand, but had to order it from the manufacturers, and on its receipt by him he shipped it to the defendants, pursuant to their directions.

The defendants had not seen the iron and they had, therefore, the right to examine and test it, if testing was necessary to enable them to ascertain its quality before accepting it, and they had a reasonable time, after receiving the iron, in which to make the examination. *Howard* v. *Hoey,* 23 Wend. 350 ; *Van Riper* v. *Ackerman,* 3 E. D. Smith, 38. They did not in a reasonable time examine the iron and notify plaintiff that it was defective in quality and would not be received, and they therefore became liable for the contract price of the property, unless there was either an express or implied warranty as to the quality of the iron which has been broken. *Sprague* v. *Blake,* 20 Wend. 61 ; *Hargous* v. *Stone,* 5 N. Y. 73 ; *Gaylord Manfg. Co.* v. *Allen,* 53 id. 515 ; *McCormick* v. *Sarson,* 45 id. 265.

There was no express warranty as to quality. There is not a word in the correspondence by which the contract between the parties is evidenced in relation to the quality. To constitute an express warranty of the thing sold, there must be a direct affirmation that it is of some particular quality. Story on Sales, § 352. Unless the statement in the plaintiff's letters, and in the bill of sale, that the iron was double X pipe iron, is a warranty that it was such, and also that it was merchantable or possessing some quality rendering it valuable, there was no warranty on which plaintiff could be made liable.

It was held by the Commission of Appeals, in *Hawkins* v. *Pemberton,* 51 N. Y. 198, that the sale of an article as being one known to persons engaged in its use or sale by the name by which he designates it, is a warranty that it is such article, and he is responsible if it is found not to be such. The defendants called

for, and the plaintiff agreed to sell to the defendants; double X pipe iron. This, within the principle of the above cases, was a warranty that the iron was double X pipe iron.

The witness Dow testifies that it was not. The plaintiff testifies that it was, and the other witnesses seem to consider it as double X pipe iron, but of very inferior quality. The warranty, therefore, if there was one, is not proved to have been broken.

Was there an implied warranty that the iron was of any particular quality? I have no doubt but the law implied an agreement that the iron, when delivered, would be of a merchantable quality. If defendants found on examination made within a reasonable time that it was not merchantable, it was their duty to return the same and thus cancel the sale. *Hargous* v. *Stone, supra; Howard* v. *Hoey, supra; Rust* v. *Eckler,* 41 N. Y. 488.

It is urged by defendants' counsel that upon the facts proved the court should have found that plaintiff warranted the iron to be suitable for making such castings as defendants were engaged in making. Plaintiff knew the use to which defendants designed to put the iron when delivered, but that furnishes no ground for implying a warranty that the iron was suitable for such use, as he did not manufacture it. *Bartlett* v. *Hoppock,* 34 N. Y. 118,122.

It is unnecessary to inquire what the rule of law would be if the plaintiff had been the manufacturer of the iron and knew the use to which defendants designed to put it. He is not shown to have had skill in iron. He was a mere dealer in the article, purchasing the various branches of iron and selling them by the name by which they were known in the market, and left the purchasers to ascertain the quality for themselves. No warranty is implied in such a case, and certainly an express warranty was not proved.

If the foregoing views are correct there was no question for the jury. The defendants accepted the iron knowing, it is to be assumed, its worthlessness, and must pay the contract price which was the amount of the note and interest, and the rulings of the court upon the admission or rejection of evidence become wholly immaterial.

There was delivered to us, on the argument of this case, a copy of the opinion of LOTT, C. C., on a former appeal, reversing a judgment of the general term, and granting a new trial. The new trial was granted, because, by the contract set forth in the answer of the defendants, which was admitted to be the agreement of sale and

purchase of the same, an express warranty was established that the iron should be double X pipe, and the very best quality of iron, bringing the highest price in market, and particularly valuable in defendants' business for its tenacity and toughness, which description and quality of iron plaintiff agreed to deliver to the defendants in a reasonable time, and that it should be suitable to be used in defendants' business.

Upon the last trial no such contract was either admitted or proved, and hence the opinion of the learned commissioner furnishes no light upon the case as made upon said trial.

The motion for a new trial is denied, and judgment ordered for the plaintiff on the verdict.

*Judgment for plaintiff.*