WILLIAM J. DOUNCE, Respondent, *v.* BENJAMIN F. Dow et al., Appellants.

| 64 | 411 |
| 133 | 144 |
| 64 | 411 |
| 149 | 604 |
| 64 | 411 |
| d167 | 55 |
| 64 | 411 |
| 75 AD¹385 | |

Defendants ordered of plaintiff, a dealer in, but not a manufacturer of, iron, ten tons of "XX pipe iron," to be used in the manufacture of castings for farming implements which required soft, tough iron. Plaintiff forwarded iron of the brand specified and billed it as such, which was accepted by defendant, without testing, and a large portion used, when it was discovered to be hard and brittle and unfit for the required purpose. In an action upon a note given for the purchase-money, wherein defendant set up as a counter-claim the damages sustained by the use of the iron, *held*, that there was a warranty of the character of the iron as "XX pipe iron," but not as to any certain quality of that brand, as plaintiff could not be presumed to know the precise quality of every lot bought and sold by him, and that plaintiff, in the absence of fraud, was only bound to deliver iron of the specified brand; that it was not enough that plaintiff knew the purpose for which it was required to bind him to deliver the quality required, defendant

should have executed a specific warranty which would have survived
the acceptance.

Also, *held*, that if a warranty that the iron was merchantable could be
implied, defendant, by using a large portion of the iron after an oppor-
tunity to examine and ascertain the quality, must be deemed to have
accepted it and to have waived the warranty.

*Day* v. *Pool* (52 N. Y., 416) distinguished.

Where a party requests certain specified questions to be submitted to the
jury for which there is no valid ground, it will be assumed that he
intends to waive the submission of other questions, and a refusal to
submit the case to the jury is proper.

(Argued February 18, 1876; decided March 21, 1876.)

APPEAL from judgment of the General Term of the Supreme
Court in the fourth judicial department in favor of plaintiff,
entered upon an order denying motion for a new trial and
directing judgment upon a verdict.    (Reported below, 6
T. & C., 653.)

This action was upon a promissory note made by defend-
ants, to the order of the plaintiff, payable at four months at
the Genesee Valley National Bank.

The defence was that the note was given for ten tons of
"XX pipe iron," which defendants bought of plaintiff, to be
used in making castings for agricultural implements, in the
manufacture of which defendants were engaged at Fowler-
ville, in this State.    The iron was shipped to, and received
by the defendants, and, without making any test or examina-
tion of it, it was mixed with other varieties of pig-iron and
converted into such castings.    The iron so purchased of
plaintiff was so rotten and worthless that the castings made
from it were valueless, and the defendants were put to great
expense in the effort to use said iron, and to great loss in
utter worthlessness of the machinery made therefrom.    This
loss and expense they set up as a counter-claim to the note.

It appeared upon the trial that the plaintiff was a dealer in
pig metals, at Elmira, and the defendants were, and had for
a number of years been, manufacturers of castings for agri-
cultural implements at Fowlerville.    Prior to the 27th of

January, 1869, several letters had passed between the parties as to pig-iron of various sorts, in one of which letters defendants ask plaintiff the price for "XX pipe iron." On the twenty-eighth of January plaintiff wrote to defendants a letter, in which he acknowledged the receipt of a letter from them, and told them he could supply them XX pipe through the season, but would not fix any certain price for the same. He said he could sell XX pipe then at forty-two dollars and fifty cents, and would sell all the season that brand at the lowest figure he could. He also gave the time and manner in which he required payment. On the twenty-ninth of January defendants wrote to the plaintiff to enter their order for ten tons of XX pipe iron, and send to them at Caledonia as soon as received. On the 12th of February, 1869, plaintiff shipped to defendants, as directed, ten tons branded and billed as XX pipe, addressed to them at Fowlerville. On or about the fifteenth of February, and before the iron was received, defendants sent to plaintiff their note for the amount of the bill. It did not conform entirely to the terms of sale, and plaintiff returned it to defendants, who corrected the error and returned the same to plaintiff. A few days thereafter the iron was received by defendants. When they came to use the castings made, they were found to be brittle and worthless, and, on examination, the XX pipe iron was found to be brittle, rotten and worthless.

Five tons of the XX iron were used before its worthlessness was discovered, and then defendants wrote to plaintiff complaining of the injury done to them by reason of the bad quality of the iron sold to them, refusing to use any more of it and offering to return what remained unused. The iron in question was manufactured at a furnace in Pennsylvania, and purchased by plaintiff to be sold by him. He had none on hand when he received defendants' order, but ordered it from the manufactory, received and shipped it as "XX pipe iron." The quality of pig iron cannot be ascertained by merely examining it externally. There are two tests by which to determine the quality. One is melting it;

the other, breaking the pig so that the internal surface may be examined, and from the appearance of that surface a person acquainted with pig-iron could determine its quality quite accurately without using it. The iron sent to defendants was not broken and examined, and the effect of it upon the castings was not ascertained for several weeks, as defendants cast a large quantity before they prepared them for use.

There was some conflict in the evidence as to whether the iron was, in fact, " XX pipe."

Counsel for the defendants asked permission to go to the jury upon the questions of the market value of the iron in question; as to whether the iron was worth any thing for the purposes of the defendants' business, and as to whether there was not a warranty on the part of the plaintiff, express or implied, that the iron shipped upon the order of defendants was fit and suitable for use in the manufacturing business of the defendants. The court declined to grant the requests; to which ruling and decision counsel for the defendants duly excepted.

The court directed a verdict for plaintiff for the amount of the note. Exceptions were ordered to be heard at first instance at General Term.

*J. B. Adams* for the appellants. Plaintiff was liable the same as if he were a manufacturer of the iron to a warranty, not only that it was XX pipe iron, but that it was suitable for manufacturing defendants' castings. (*Beals* v. *Olmstead*, 24 Vt., 114; Story on Con. [2d ed.], § 836; Sedg. on Dam. [4th ed.], 333, note; 2 Kent's Com. [10th ed.], 660; *Hawkins* v. *Pemberton*, 51 N. Y., 198; *Hoe* v. *Sanborn*, 21 id., 552; *Gurney* v. *A. and G. W. R. Co.*, 58 id., 358; *Jones* v. *Bright*, 5 Bing., 533; *Brown* v. *Edgington*, 5 M. & G., 371; *Muller* v. *Eno*, 14 N. Y., 597; *Day* v. *Pool*, 52 id., 416; *Bradford* v. *Marley*, 13 Mass., 144.) Evidence of defendants' damages by reason of the breach of plaintiff's warranty was competent. (*Parks* v. *Morris Ax and Tool Co.*, 54 N. Y., 586; *Passinger* v. *Thorburn*, 34 id., 634.) Defend-

ants are not chargeable with contributory negligence in using the iron without testing it. (*Bk. of Kingston* v. *Eltinge*, 40 N. Y., 391; *Dounce* v. *Dow*, 57 id., 16.)

*J. R. Ward* for the respondent. The contract was executory, and it was defendants' duty to test and examine the iron as soon as received. (*Hargous* v. *Stone*, 5 N. Y., 86; *Beck* v. *Sheldon*, 48 id., 365; *Dutchess Co.* v. *Harding*, 49 id., 323; *Reed* v. *Randall*, 29 id., 362; *Gaylord Mfg. Co.* v. *Allen*, 53 id., 515; *Gurney* v. *A. and G. W. R. Co*, 58 id., 364.) No warranty can be implied from the fact that plaintiff knew defendants' business and that they wanted the iron to use in it. (*Bartlett* v. *Hopkins*, 34 N. Y., 118, 122, 125; *Beck* v. *Sheldon*, 48 id., 365; 5 id., 86; 29 id., 362; *Hoe* v. *Sanborn*, 21 id., 557.) Defendants were not entitled to be compensated for the damages of which they complain. (*Passinger* v. *Thorburn*, 34 N. Y., 634; *Milton* v. *H. R. Stbt. Co.*, 37 id., 210.)

CHURCH, Ch. J. The article ordered was "XX pipe iron," and the same was forwarded and billed as such. This was a warranty of the character of the article within the decision in *Hawkins* v. *Pemberton* (51 N. Y., 198), which modified, to some extent, the earlier decisions of *Seixas* v. *Woods* (2 Caines, 48) and *Swett* v. *Colgate* (20 J. R., 196). The words "pipe iron" referred to the furnace where manufactured, and "XX" to the brand indicating the quality. The plaintiff was not a manufacturer, but a dealer in "pig metals," and was not presumed to know the precise quality of every lot of pigs bought and sold by him, bearing that brand, and hence cannot be held to have warranted that the pigs in question were of any certain quality. (*Hoe* v. *Sanborn*, 21 N. Y, 552.) There was no fraud. Both parties supposed, doubtless, that the iron was first quality for the purpose for which it was intended. But it is not enough that the plaintiff knew such purpose. (34 N. Y., 118.) The defendant should have exacted a specific warranty, and then both parties would have acted under-

standingly. If the defendants had ordered XX pipe iron, which was tough and soft, and fit for manufacturing agricultural implements, and the plaintiff had agreed to deliver iron of that quality, a warranty would have been established which, probably, within the case of *Day* v. *Pool* (52 N. Y., 416), would have survived the acceptance of the article. Here both parties acted in good faith. The defendants ordered simply XX pipe iron, supposing that such iron was always tough and soft. The plaintiff forwarded the iron under the same impression. The iron proved to be brittle and hard, and the question is, which party is to bear the loss? The plaintiff (in the absence of fraud) was only bound by his contract, which was to deliver XX pipe iron, and we are now assuming that such iron was delivered. If so, he was relieved from liability. The only other liability which can be claimed that he incurred was of an implied warranty that the iron was merchantable, and this could not be affirmed unless the contract was executory. (2 Kent's Com. [11th ed.], note *c*, p. 634.) Without inquiring whether such a warranty would be implied under the circumstances of this case, or if it would, what in this case the term "merchantable" would import, it is sufficient to say that the defendants, by using a large portion of the iron after an opportunity to examine and ascertain whether it was merchantable, must be deemed to have accepted it, and to have waived the alleged implied warranty within the general rule which, to this extent, is not impaired by *Day* v. *Pool* (*supra*).

The only serious question in the case is, whether the court erred in directing a verdict. There was, as we have seen, an express warranty that the iron was XX pipe iron, and there was some evidence, although slight, that it was not. It is claimed that this point was waived. The counsel for the defendants asked to go to the jury upon several questions, but did not include among them the question whether this warranty was broken. It must, I think, be assumed that when a party requests that certain specified questions be submitted to the jury, for which there is no valid ground, that he

intends to waive the submission of other questions. (43 N. Y., 85, and cases cited.)

Regarding this point as waived, the requests made to submit to the jury were properly declined.

The ruling in rejecting the letter of the 28th March, 1868, to the defendants' predecessors, with this point out of the case, was not erroneous. That letter was not a warranty that the iron in question was tough and soft, but might have been admissible as a declaration of the party, if the iron had not been XX pipe iron. The same brand of iron is not always of the same quality, and the statement, the year before, by the plaintiff that he was receiving iron of that brand, which was tough and soft, would not inure as a warranty that all the iron which he might thereafter sell of that brand was of that quality.

We think that the judgment must be affirmed.

All concur; ANDREWS, J., concurring in result.

Judgment affirmed.