# Gachet *v.* Warren & Burch.

*Action by Purchaser for Breach of Warranty on Sale of Oats.*

1. *Warranty on sale of goods.*—In the absence of fraud, the general rule of the common law is, that the buyer of goods takes them at his own risk, in the absence of an express warranty, unless a warranty is implied from the nature and circumstances of the sale.

2. *Same, on sale of goods by description.*—When goods are sold by description, and the buyer has not an opportunity of inspecting them, it is of the essence of the contract that the goods delivered shall answer to the description; and there is, also, an implied warranty that the article furnished shall be merchantable.

3. *Same, on sale by manufacturer or dealer.*—When a manufacturer or dealer contracts to supply an article which he makes, or in which he deals, knowing that the purchaser wishes to apply it to a particular purpose, and necessarily trusts to his judgment or skill, there is an implied warranty on his part that the article shall be reasonably fit for the purpose to which it is to be applied; but, if he contracts to sell a known and described article, and delivers that article, though he may know that the purchaser intends it for a specific purpose, there is no implied warranty that it is suitable for that purpose.

4. *Same, on sale by sample.*—On a sale of goods by sample, the seller only warrants that the bulk of the goods delivered shall correspond with the sample.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by Nicholas Gachet, who was a planter and farmer residing in Bullock county, against the appellees as late partners, a mercantile partnership doing business in the city of Montgomery, to recover damages for the breach of an alleged warranty on the sale of two hundred and fifty bushels of "rust-proof oats" by the defendants to the plaintiff, in February, 1880; and was commenced on the 7th March, 1881. As the pleadings are set out in the record, it appears

[Gachet v. Warren & Burch.]

that the cause was tried on issue joined on the plea of the statute of limitations of one year, which was the only plea filed by the defendant. On the trial, as the bill of exceptions states, the plaintiff testified, as a witness for himself, that he, in company with one West, went to the defendants' store in Montgomery, and inquired of J. R. Warren, one of the defendants, "whether he had rust-proof oats;" that Warren asked how many bushels they wanted, and, being told that they wanted three hundred bushels, "said that he then had only about fifty bushels of rust-proof oats, but had a car-load in transit which would arrive in a day or two;" that he then asked said Warren, "if he would guarantee the oats to be rust-proof oats," and Warren replied, "that he would;" that he then agreed to take the fifty bushels on hand, and two hundred and fifty bushels of the oats in transit, and made arrangements for the deposit of the money ($250) with a friend in Montgomery, and took a sample of the oats on hand; that he did not recollect that he told said Warren, at the time, "that he wanted the oats to plant, but he supposed Warren knew it, as he told him that it would do if he could get the oats in five days, as he had enough to keep his plows going for that time;" that Warren "gave him a small quantity of the oats on hand, not exceeding a handful, and said that the oats he would ship would be like the sample." He further testified to the subsequent shipment and receipt of the oats, and produced the receipt for the money paid, in which the goods were described as "250 bu. R. P. Oats;" that he let West take the fifty bushels of oats on hand, and himself planted two hundred bushels of the others when received, in suitable ground, and gathered only about two hundred bushels from the crop, instead of twenty-five hundred bushels, which would have been an average crop if the oats had not rusted. Said West, who was examined as a witness for the plaintiff, testified to the same effect, as to the negotiations and terms of the contract between the parties, except that "he did not hear defendant guarantee the oats sold to plaintiff;" and he further testified, that the fifty bushels which he obtained and planted "produced a good crop, and did not rust." Warren, testifying as a witness for the defendants, stated the terms of the negotiation and conversation in substantially the same words, but denied that he gave any warranty that the oats to be delivered should be "rust-proof oats," but only promised that they should correspond with the sample which the plaintiff took; and that the oats subsequently delivered did correspond with those from which the sample was taken, "and was known and called 'rust-proof oats.'" Other witnesses introduced by the defendants testified, that "rust-proof oats" was a variety well known to commerce, which had

19

[Gachet v. Warren & Burch.]

been sold in and around Montgomery for several years, and which was so distinct from the other varieties "that a person of ordinary intelligence, on comparing a sample with any other variety, could easily tell the difference, which was very marked."

This being the substance of the evidence, all of which the bill of exceptions purports to set out, the court thereupon charged the jury, on the request in writing of the defendant, as follows:

"1. If the jury believe. from the evidence that, on the 14th February, 1880, the plaintiff and West went into the defendant's store, and asked him if he had any rust-proof oats; and that defendant replied, that he did not have the amount they wished, but would have a car-load in a few days; and that defendant then agreed, after some negotiations between the parties, to sell and deliver said oats to plaintiff; and that there is a kind of oats, known to the commercial world as 'rust-proof oats'; and that the oats delivered by defendant to plaintiff was the kind of oats so known and designated,—then plaintiff is not·entitled to recover, although the oats may have rusted; and before they can find for the plaintiff, the evidence must satisfy them that the oats delivered to him by Warren was not the kind of oats known to the commercial world as 'rust-proof oats.'

"2. If the jury believe, from the evidence, that there is a variety of oats known and designated as 'rust-proof oats'; and that the contract between the plaintiff and the defendant was for the purchase of 'rust-proof oats'; and that the oats delivered by defendant to plaintiff was the oats so known and designated,—then plaintiff is not entitled to recover, though the oats rusted, and the plaintiff's crop failed.

"3. If the jury believe, from the evidence, that there is a kind of oats known to commerce as the 'rust-proof oats'; and that the plaintiff inquired for, and the defendant agreed to sell him such oats; and that the oats delivered to plaintiff were the oats so known and designated,—then the plaintiff is not entitled to recover, even if the jury should believe that the oats rusted, and that thereby plaintiff's crop was a failure.

"4. If the jury believe, from the evidence, that there is a variety of oats known to commerce as the 'rust proof oats'; and that the defendant guaranteed to plaintiff that the oats he was to sell and deliver to him should be the 'rust-proof oats'; and that the oats delivered were of the variety known and designated as 'rust-proof oats,'—then plaintiff is not entitled to recover in this action.

"5. If the jury believe, from the evidence, that there is a variety of oats known and designated in commerce by the

name of 'rust-proof oats'; and that the defendant agreed and
guaranteed to sell and deliver to plaintiff the 'rust-proof oats';
and that the oats which he did deliver was the oats so known
and designated,—then there was no breach of contract on the
part of the defendant, and the plaintiff is not entitled to re-
cover, even though the jury may believe that the oats rusted.

"6. The burden of showing that the oats delivered by the
defendant was not the kind of oats which he contracted to de-
liver, is upon the plaintiff; and unless he has satisfied the minds
of the jury, by the evidence adduced, that the oats delivered
was not the kind or variety so agreed to be delivered, then they
must find for the defendant.

"7. If the jury believe, from the evidence, that the defend-
ant furnished the plaintiff with a sample of the oats which he
was to deliver; and that the contract between them was, that
the oats to be delivered were to be of the same character and
quality as such sample; and that plaintiff took such sample
home with him, and, when the oats were delivered to him, com-
pared them with the sample, and found and accepted them as
the same character and quality of oats,—then the plaintiff can
not recover in this action, and the burden of showing that the
oats delivered were not of the same character and quality is on
the plaintiff."

The plaintiff excepted to each of these charges, and he now
assigns them as error.

ARRINGTON & GRAHAM, and E. P. MORRISSETT, for the ap-
pellant, cited *Gerst v. Jones*, 32 Gratt. 518, or 34 Amer. Rep.
773; *Jones v. Just*, 3 Q. B. 197; *Van Wyck v. Allen*, 69 N. Y.
61, or 24 Amer. Rep. 136; *Bragg v. Morrill*, 24 Amer. Rep.
104, and note; 5 Wait's Actions and Defenses, 554.

TROY & TOMPKINS, *contra*, cited *Danforth v. Laney*, 28 Ala.
274; *Chanter v. Hopkins*, 4 M. & W. 399; *Allen v. Lake*,
5 Exch. 779; *Wieler v. Schilizzi*, 17 C. B. 619; *Dounce v.
Dow*, 64 N. Y. 411; *Fraley v. Bispham*, 10 Penn. St. 320;
*Towell v. Gatewood*, 3 Illinois, 22; *Mixer v. Coburn*, 11 Metc.
559; *Dollard v. Potts*, 6 Allen, N. B. 443; *Gossler v. Eagle
Sugar Refinery*, 103 Mass. 331; *Swett v. Shumway*, 102 Mass.
365; *Joiling v. Kingsford*, 13 C. B. (N. S.) 447; *Winsor v.
Lombard*, 18 Pick. 57; *Prideaux v. Bunnett*, 1 C. B. (N. S.)
613; *Port Carbon Iron Co. v. Grove*, 68 Penn. St. 149; *Whit-
aker v. Eastwick*, 75 Penn. St. 229; 9 B. & C. 259; 2 M. &
G. 279.

BRICKELL, C. J.—The assignments of error present no
other question, than the correctness of the instructions given

[Gachet v. Warren & Burch.]

the jury at the instance of the defendants, on the trial in the court below. Six of these instructions assert, in varying language, and by reference to particular facts in evidence, that if the contract between the parties was for the sale and delivery of seed-oats, of the species known in the market as "*rust-proof oats*," and the oats delivered were of that species, there is no liability upon the sellers, although the product of the oats rusted, and they knew the purchaser was buying for the purpose of sowing and raising a crop. One or more of the instructions, also, affirm that the burden of proof rested upon the purchaser, to show that the oats delivered were not of the *species* known as "*rust-proof oats*."

In the absence of fraud, the general rule of the common law, as applicable to sales, so far as quality is concerned, is embodied in the maxim, *Caveat emptor*. The buyer takes the goods at his own risk, if there be not an express warranty by the seller; or unless, from the nature and circumstances of the sale, a warranty is implied.—*Ricks v. Dillahunty*, 8 Port. 130; *Barnett v. Stanton*, 2 Ala. 181. When goods are sold by description, and the buyer has not the opportunity of inspecting them, it is a part of the contract—it is of the very essence of the undertaking—that the goods delivered shall answer to the description; otherwise, the buyer could contract for one thing, and the seller deliver another and different thing. In such case, there is also an implied warranty, that the thing delivered shall not only answer the description, but that as such thing it shall be salable or merchantable.—Benjamin on Sales, § 656. The purchaser can not insist that the thing shall be of any particular quality or fineness, but he has the right to demand that it shall be a merchantable article, answering to the description of the contract. If it be not, though it may bear the denomination, it does not answer to the description—it is not in fact the thing sold.

"Where a manufacturer, or a dealer, contracts to supply an article he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is, in that case, an implied term of warranty, that it shall be reasonably fit for the purpose to which it is to be applied." *Pacific Guano Co. v. Mullen*, 66 Ala. 582; Benjamin on Sales, § 157. But, if a manufacturer, or dealer, contracts to sell a known and described thing, although he may know the purchaser intends it for a specific use, if he delivers the thing sold, there is no implied warranty, that it will answer, or is suitable for the specific use, to which the purchaser intends applying it. *Chanter v. Hopkins*, 4 Mees. & Wels. 399; *Hoe v. Sanbone*, 21 N. Y. 552; *Bartlett v. Hoppock*, 34 N. Y. 118; *Dounce v.*

*Dow*, 64 N. Y. 411; *Port Carbon Iron Co. v. Grove*, 68 Penn. 149; *Gossler v. Eagle Sugar Refinery*, 103 Mass. 331; 1 Pars. Contr. 586.

These are all recognized principles of the law of sales, and the several instructions to the jury we are considering, in effect, affirm them. Whether the sale was of the oats known in the market as "*rust-proof oats*," and whether the oats delivered corresponded to that description, were facts fairly submitted for the determination of the jury. If these facts were found affirmatively by the jury, though the sellers were dealers in oats, and knew the purpose to which the buyer intended to apply them, there can not be said to be any express stipulation by them, that the oats were suitable for that particular use; nor any implied warranty, that for it they were reasonably fit. The kind of oats suitable for his use, the purchaser selects—he does not rely on the judgment or skill of the seller to select for him. The judgment or skill of the seller is trusted only to providing oats of a designated species. When oats of that species were furnished, not unsalable, unmerchantable, the contract was performed by the sellers. And if there was a warranty, or representation by them, that the oats were of that species, the warranty or representation was not broken. The oats may not have produced as the buyer expected; his expectations were capable of disappointment, though the sellers kept the contract, made no false representations, and no warranty which was broken.

The affirmative facts essential to the plaintiff's recovery, in the aspect of the case presented by the instructions, were, that the defendants had delivered oats not corresponding to the oats sold; or had made a warranty or representation of the quality of the oats, which was broken, or untrue. The burden of proving these facts necessarily rested upon him, and could not be discharged, unless of the truth of the facts the jury were satisfied. This is the substance of the instructions, and there is no reason for doubting their correctness.—*Harris v. Bell*, 27 Ala. 520; *Jarrell v. Lillie*, 40 Ala. 271. In all actions upon warranties, it is necessary for the plaintiff to prove clearly and positively the breach thereof.—Chitty on Contracts, 402 *a*.

The seventh instruction affirms no more than that, if the sale was by sample, and the oats delivered corresponded to the sample, there was no right of recovery in the plaintiff. Upon a sale by sample, all that the vendor warrants is, that the bulk of the goods delivered shall correspond, or be equal to the sample. Benjamin on Sales, § 648. The burden of proving that they do not, must rest upon the buyer, who accepts and uses the goods as equal to the sample.

Affirmed.