(58 Misc. Rep. 499.)

KINCH v. HAYNES.

(Delaware County Court. March, 1908.)

1. SALE—IMPLIED WARRANTY.
    There is no implied warranty on a sale to a butcher of cows that they are not diseased and unfit for food.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 746, 772–776.]

2. SAME—EXPRESSION OF OPINION.
    On a sale by a farmer to a butcher of cows, statement of the seller after the sale was consummated, when one of the cows had been running, and appeared to be breathing hard, that she was all right, was not a warranty, but only an expression of opinion, not influencing the buyer in making the purchase.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 43, Sales, §§ 727–735.]

Appeal from Justice Court.

Action by Porter Kinch against Harry Haynes. From a judgment of a justice in favor of plaintiff, defendant appeals. Reversed, and judgment for defendant.

C. L. Andrus, for appellant.

James R. Baumes, for respondent.

GRANT, J. The plaintiff is a butcher residing at Sidney, N. Y. The defendant is a farmer residing about 4½ miles from Sidney. On the 1st day of May, 1907, plaintiff purchased of defendant two cows. He had looked at the cows several times before he purchased them. On May 21st plaintiff went for the cows. They were driven up from the field. Plaintiff drove one and defendant the other. The cows had been running some, and they had some trouble to get them started. At the barn defendant paid plaintiff $50 for the cows and $1 for their keeping. After the plaintiff had started with the cows, and had gone 15 or 20 rods up the road from the barn, he noticed one of the cows breathed hard, and called defendant's attention to it, and he said, "She is all right." The plaintiff drove the cows home, and soon after butchered one, and discovered that she had tuberculosis and was unfit for human food, and he could not and did not sell the meat; and this action is brought to recover damages which plaintiff alleges he has sustained upon the theory that there was an implied warranty on the part of the defendant that the cow was sound and fit for human food. It is not claimed that there was any fraud, and the evidence does not disclose any express warranty. The statement made by the defendant, when plaintiff called his attention to the fact that the cow was breathing hard when driven into the highway, that "She is all right," cannot amount to a warranty, as the statement was not made until after the sale was consummated. At the most, it was a mere expression of opinion which did not influence the plaintiff in making the purchase.

The only question presented for determination upon the appeal is whether or not the law implies a warranty that the cow was not diseased and unfit for food, or whether the doctrine of caveat emptor applies.

On the cross-examination the plaintiff testified:

"Q. When did you buy these cows? A. I cannot tell, but about May 1st. It might have been earlier. No one was with me at the time when I made the bargain. I went there to see if they were fat enough for beef. He asked me $50 for the two cows. I looked at them in the barn.

"Q. Did you discover anything at that time that either of them were diseased? A. No. I have bought cattle of him before and they were all right.

"Q. Was anything said at that time about what you wanted to do with the cows? A. I told him I cannot use them just then."

On May 21st, when the plaintiff got the cows and paid for them, he also paid $1 for their keeping, apparently from May 1st. It cannot be said the cows were sold for immediate consumption, because at the time they were sold, about May 1st, plaintiff advised the defendant he could not use them just then; so at least 21 days elapsed after the sale and before they were slaughtered and the defect complained of was discovered. In my opinion the doctrine of caveat emptor is controlling

in the case, as it does not come within any of the exceptions to the rule. There are practically only four exceptions and they may be briefly stated as follows: First. The law implies a warranty of title, upon the sale of chattels. Second. When the articles sold are articles of food and are sold direct to the consumer for immediate consumption. Third. Upon the sale of the chattel by the manufacturer, when a warranty is implied that the article sold is free from any latent defect growing out of the process of manufacture. Fourth. Upon sale by sample that the goods shall be according to sample. Some cases seem to recognize still another exception that where the articles sold have some latent defect, known to the seller but not to the purchaser, and the defect is concealed by the seller, the law implies a warranty. These cases, however, cannot be classed as an exception to the rule, as the cause of action, if any exists, is based on the theory that a fraud has been practiced. The doctrine of caveat emptor, subject to the foregoing exceptions, is still the settled law of the state. In this case the plaintiff went several times to see the cows, and, at the time they were purchased, examined them in the stable; so that he had equal opportunity of knowledge as to the character or quality of the cows sold before he made the purchase. It was held in Bartlett v. Hoppock, 34 N. Y. 118, 88 Am. Dec. 428:

"That where the vendor of the articles is not the manufacturer of the articles sold, and in the cases where the vendee, as in this case, has equal knowledge and equal opportunity of knowledge of the character and the quality of the article sold, with the vendor, the vendor is only liable upon an express warranty."

In Hargous v. Stone, 5 N. Y. 73, Judge Paige, at page 89, in speaking of the principle of caveat venditor, says:

"This rule creates obligations where none were intended. It implies warranties where none were actually made. The most just and convenient rule is to confine the responsibility of the seller in relation to the quality and the goodness of the articles sold to a case of a warranty or fraud. This rule will effectuate the intention of the parties, and will not surprise the seller with responsibilities he never intended to assume. Where the article sold is equally accessible to both parties, and its quality equally unknown to both, there can be neither justice nor propriety in implying a warranty on the part of the seller against latent defects."

The respondent's attorney has called my attention to several authorities which he argues would warrant the court in finding as matter of law that, upon the facts in the case, there was an implied warranty that the cow in question was sound and free from latent defects, among them the case of Van Bracklin v. Fonda, 12 John. 468, 7 Am. Dec. 339. This was a case where a quarter of beef was sold to a consumer for immediate consumption, and hence came squarely within one of the exceptions heretofore mentioned. The case of Rothmiller v. Stein, 143 N. Y. 581, 38 N. E. 718, 26 L. R. A. 148, cited by respondent, was an action to recover damages for fraud based upon false statements as to the value of the stock of a corporation of which the defendants were directors. The judge writing the opinion refers to the case of Van Bracklin v. Fonda upon the question of implied warranty in the sale of food for animal or human consumption; and, as heretofore stated, the

rule of law applicable to the facts of that case was correctly stated. The case of Fairbanks Canning Co. v. Metzger, 118 N. Y. 265, 23 N. E. 373, 16 Am. St. Rep. 753, is also cited by the respondent; and the language of Judge Parker quoted as applying to the case. The court in that case did not decide the question of implied warranty. Judge Parker expressly states they did not pass upon that question. He says:

"It is not necessary for the disposition of this case to decide, and therefore it is not decided whether a warranty is implied in all cases of sale of fresh dressed meat, by the party slaughtering the animals, that they were not heated before being killed, and, as some of my associates are averse to any expression whatever upon that question at this time, what is said must be regarded as an individual view, rather than that of the court."

The personal views of Judge Parker cannot be considered as deciding the question, because it was not the decision of the court; and there is not, so far as I can learn, any adjudication which does not recognize the doctrine of caveat emptor or that enlarges the exception to the rule already recognized and established. The theory upon which the respondent seems to base his cause of action is that the sale was made by the vendor on May 21st to the vendee, who was a butcher, to be slaughtered and immediately sold to his customers as food, and that the fact that he was not to consume the meat himself made no difference. This position is not tenable for the reason he himself testified, on cross-examination, that the sale was made about May 1st; and he advised the vendor he could not use the stock at that time. This statement is corroborated by the fact that, when the cows were taken and paid for, he at the same time paid $1 for their keeping. If the cows had not been previously purchased and were not his, I cannot conceive of any reason why he should pay for their keeping. At all events, no explanation was given. The sale was therefore simply a sale of merchandise; and, as no fraud is alleged, and no express warranty proved, the law implies no warranty and the rule caveat emptor applies to the case.

The judgment must therefore be reversed, with costs, and an order may be entered accordingly.

Judgment reversed, with costs.