A. BLUMBERG, Respondent, *v.* CHAUNCEY ROMER, Appellant.

County Court, Chenango County, June 22, 1938.

*Truesdell. & Marshall,* for the appellant.

*Lusk, Buck, Ames & Folmer,* for the respondent.

BROWN, J. The defendant has appealed from a judgment rendered against him and in favor of the plaintiff in Justice's Court of the town of Lincklaen, Chenango county, following a trial by jury. Plaintiff recovered on a cause of action based on fraud and deceit for damages alleged to have been sustained in the sale to him by defendant of a boar hog.

Briefly, the facts disclosed by the evidence in the return filed by the justice of the peace are these. The plaintiff conducted a grocery store and meat market in the village of DeRuyter, N. Y., and had been so engaged for twelve or thirteen years. He had a slaughter-house where he had animals, including hogs, slaughtered, and testified that he did "butcher occasionally." In the latter part of April, 1937, the defendant was at plaintiff's place of business and inquired as to the price the latter was paying for pork and stated " he had one that would weigh about one hundred seventy-five pounds." During the conversation he also mentioned the fact that he had a heifer for sale, and plaintiff stated that he would be at defendant's farm the following Sunday to look at it and, while there, he " might as well look at the pig." No price was fixed at that time. Plaintiff went to defendant's farm the Sunday following the conversation at the store and there saw the heifer and the hog. On discovering the size and apparent weight of the hog, he estimated it would weigh nearly 300 pounds and, because of the size, offered to pay twelve cents per pound instead of thirteen cents, the price he was paying for pork weighing from 175 to 200 pounds. The animal was a boar hog. It was delivered, having been slaughtered, to plaintiff's place of business during the week and placed in a cooler where it remained for two days, and then a piece of pork from the hog was sold to one of plaintiff's customers and it was discovered, while the same was being prepared for eating, due to the odor, that it was pork from a boar hog. It seems that meat from a boar hog is not suitable for food.

In plaintiff's complaint he alleged that in the sale of the hog defendant " deceived and defrauded plaintiff by selling and deliver-ing the same to him." The testimony given in the case was taken by a stenographer, and the transcribed minutes are a part of the return filed by the justice of the peace. There is no proof that defendant made any representations concerning the hog except an estimate of its weight, which is not in issue here. The only theory upon which the judgment can be sustained on the ground of deceit is that defendant by his silence concealed from plaintiff a material fact at the time of the sale.

The facts here are insufficient to show that defendant practiced fraud and deceit at the time of the sale. In *Dambmann* v. *Schulting* (75 N. Y. 55, at p. 61), Judge EARL, writing for the court, says: " The general rule is, that a party engaged in a business transaction with another can commit a legal fraud only by fraudulent mis-representations of facts, or by such conduct or such artifice for a fraudulent purpose as will mislead the other party or throw him off

his guard, and thus cause him to omit inquiry or examination which he would otherwise make. A party buying or selling property, or executing instruments, must by inquiry or examination gain all the knowledge he desires. He cannot proceed blindly, omitting all inquiry and examination, and then complain that the other party did not volunteer all the information he had." (*People's Bank of City of N. Y.* v. *Bogart*, 81 N. Y. 101; *Graham* v. *Meyer*, 99 id. 611; *Studer* v. *Bleistein*, 115 id. 316.)

Plaintiff had inspected the hog before making the purchase. In excusing his failure in not discovering the sex of the hog, he testified he only looked at its head. There is not the slightest proof that the defendant by word or act prevented a full and thorough inspection of the hog by the plaintiff at the time he was at the farm or made any attempt to frustrate an examination. There is nothing in the record to show that plaintiff relied on the defendant's judgment in making the purchase. It was not necessary he should, for he was in the business of buying and selling pork and beef, and his judgment was fortified by an experience as a butcher and retail dealer. Furthermore, there is no evidence that the defendant had any knowledge that a boar hog was not edible. The size of the hog and its apparent weight might well have prompted him to make more than a mere casual inspection, such as he claims to have made. It was not the defendant's fault if plaintiff failed to take advantage of the opportunity to make the inspection that a buyer would naturally make under similar circumstances.

In my opinion the judgment cannot be sustained on the theory of fraud and deceit. However, under the rule that appellate courts should show indulgence in appeals in actions originally brought in a Justice's Court and disregard technical errors and defects (*Jackson* v. *Helmer*, 73 App. Div. 134), this court will consider whether the judgment is sustainable on some other theory. (*Smith* v. *Fredericks*, 146 Misc. 453.)

In his brief, counsel for plaintiff argues that there was an implied warranty in the sale of the hog by the defendant that it was marketable and fit for retail purposes, invoking the well-established rule that in sales by a retail dealer of articles of food for immediate use there is an implied warranty that the same is fit for human consumption, and stresses the point that by selling a dressed hog the defendant was deliberately deceiving the plaintiff. The weakness of this argument is that plaintiff bargained for the hog while it was alive and after inspecting it, with full opportunity to exercise his own judgment in making the purchase. The sale was not made by a dealer to a consumer but by the seller to a retail dealer. There is an entire lack of evidence that plaintiff relied on the skill or judgment of the defendant in the purchase of the hog. The rule

applicable in sales by a retail dealer of articles of food for immediate use by the consumer does not apply to the facts appearing in the instant case. (*Cotton* v. *Reed*, 25 Misc. 380; *Wart* v. *Hoose*, 65 id. 462; *Whipple* v. *Sherman*, 121 id. 14; *Savino* v. *Latturulo*, 170 N. Y. Supp. 30.) The facts in this case call for the application of the maxim *caveat emptor*. (*Goldrich* v. *Ryan*, 3 E. D. Smith, 324; *Hyland* v. *Sherman*, 2 id. 234; *Kinch* v. *Haynes*, 58 Misc. 499; *Bokenfohr Co., Ltd.*, v. *Gross*, 177 App. Div. 768; *Marcuse* v. *Kampelmacher*, 167 N. Y. Supp. 557.)

Under the Personal Property Law, implied warranties have been made the subject of statutory regulation. Section 96 of that law reads: " Subject to the provisions of this article and of any statute in that behalf, there is no implied warranty or condition as to the quality or fitness for any particular purpose of goods supplied under a contract to sell or a sale, except as follows: 1. Where the buyer, expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose. * * * 3. If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed." In *Rinaldi* v. *Mohican Co.* (225 N. Y. 70, at p. 73), Judge ANDREWS says: " In a sale of food, therefore, there is no longer an implied warranty of fitness unless the buyer expressly or by implication acquaints the seller with the purpose of the purchase and unless it appears that the buyer relies on the seller's skill or judgment. Even then if the buyer has examined the goods and should have discovered the defect there is no warranty. The burden of showing that he has made known his purpose and that he has relied upon the seller is on him who claims the existence of an implied warranty. If either of these two facts do not appear he fails in his claim. Whether they exist or not may often become a question of fact to be solved by the jury. But often also, where the facts are undisputed, and no differing inferences may be drawn from them, the question becomes one of law for the court; and we have to determine just what and how much evidence is necessary to show conclusively the existence of these essential elements."

Plaintiff relies on *Wanamaker* v. *Schultz* (123 Misc. 670); *Smith* v. *Fredericks* (146 id. 453), and *Brown* v. *LoGrasso* (203 App. Div. 50) as authority for his contention that, the jury having passed on the questions of fact, the judgment in Justice's Court should not be disturbed. In the *Wanamaker* v. *Schultz* case it appears from the opinion that there was a disputed question of fact. In the

*Smith* v. *Fredericks* case there was a variance in the testimony in behalf of the plaintiff from that offered by the defendant, and in the *Brown* v. *LoGrasso* case the errors complained of on appeal related to rulings in the Justice's Court on a motion and in excluding evidence offered by the defendant. Those cases are not considered applicable here, as in the instant case there are no disputed questions of fact that raise a factual issue.

On the plaintiff's own case, he is not entitled to recover damages against the defendant, in my opinion. The judgment rendered in the Justice's Court is reversed, with costs.