# Perry *v.* Johnston *et al.*

## *Action on a Bill of Exchange.*

1. *The silence of a party against whom a claim is asserted, may be proven.* The silence of a party against whom a claim or right is asserted, is a fact which may be shown in an action for the enforcement of such claim or right; and from it the jury may infer an admission of the truth of the assertion.

2. *No inference prejudicial to the party can be drawn from his silence relative to the remarks of a stranger.*—But the mere declaration of strangers, with whom the party has no connection, though made in his presence, may be best answered by silence; and from silence no inference against the party should be drawn.

3. *An acquiescence in a falsehood, for the purpose of profit, will avoid a contract.*—A tacit acquiescence in a misrepresentation made by another, the falsity of which is known, or the truth of which a vendor has not a reasonable belief, from which he intends to derive an advantage, may avoid the contract or give right to an action for damages.

4. *A misrepresentation of a material fact will authorize a rescission of the contract.*—A misrepresentation of a material fact by the vendor, on which the vendee relies, and has the right to rely, although made without a knowledge of its falsity, may constitute a fraud on the purchaser, authorizing a rescission of the contract of sale; or furnish a ground of defence to an action for the price, or support an action on the case for deceit.

5. *If the vendor knows the purpose of the purchaser, and represents the prop-*

[Perry v. Johnston et al.]

*-erty fit for it, the representation will be an implied warranty.*—On a sale of property which is present and open to examination by the purchaser, there is no implied warranty of its fitness for any particular use. But if the vendor is informed that the vendee is buying the property for a particular use, a representation by the seller of its fitness, is an implied, if not an express, warranty.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

This is a suit brought in the Circuit Court of Montgomery county by Nelson W. Perry, to recover the amount due on a bill of exchange drawn by William H. Johnston, William Johnston and W. W. Screws, the defendants.

On the trial, " the plaintiff read in evidence the bill of exchange described in the complaint, and protest thereof for non-payment."

The defendant, William H. Johnston, testified that the bill of exchange " was given for a Jersey bull, named Jesse, pur-chased by him from William H. Roberts, the payee in said bill, on the 23d day of November, 1872, for five hundred dollars; that said Roberts had the bull on exhibition at the fair held near the city of Montgomery, and stated that he was a good breeder, and of imported stock, and was out of the finest animals of his kind in the United States. Colonel Wilson, of Mobile, in the presence of Roberts, represented that Jesse was a very superior animal for breeding purposes, and spoke highly of his qualities. He (Johnston) told Rob-erts he wanted him for immediate use as a stock bull. Rob-erts and Johnston came to the city of Montgomery, and the trade was closed for Jesse at the price of five hundred dol-lars—the forty dollars added was for interest. A day or two after the purchase, Jesse was taken to defendant's plantation, in this county, and on the second day after arriving there, he went to one or two cows, and from time to time afterwards he went to a number of other cows, but none of them proved to be with calf by him; that Jesse was fat and apparently in fine condition when purchased, and continued to look well and eat heartily for some months, but afterwards Jesse began to pine away, and died in February, 1873. A *post mortem* examination of Jesse was had, and it was found that his heart was enlarged to several times the natural size, and was filled with water. No other appearance of disease was discovered."

Defendant Screws testified that he had signed the bill of exchange, and that in September, 1873, a notice was pub-lished that the consideration of the bill had failed, " and it was admitted that the plaintiff did not acquire the bill from

Roberts in due course of trade without notice, the said bill having been protested for non-acceptance before he acquired it."

The deposition of B. Wyche Walker was then introduced by the defendant, which with other matters, stated that he "advised Johnston not to buy him, and Colonel Wilson, I think it was the man who had him in charge, overheard me, and said to Johnston that he would guaranty him all right and ready for immediate use." To this part of the deposition the plaintiff objected, but the objection was overruled, and the plaintiff excepted to this action of the court.

The court charged the jury: "Was there a misrepresentation made by the owner to the purchaser, at the time of the purchase, that the bull, Jesse, is a good stock bull—good for breeding purposes? If such representations were made, and and the purchase of the bull, Jesse, was on account of them, then, if you find from the evidence that the bull, Jesse, was in fact not a good stock bull, and not good for breeding purposes, the plaintiff should not recover."

To this charge the plaintiff excepted, and asked the court to give the following written charge.

"If the jury believe from the evidence that Roberts had the bull, Jesse, on exhibition at the agricultural fair, and while so on exhibition at the fair, the defendant negotiated for his purchase, and that pending said negotiation Roberts stated to defendant that the bull had always been successful in getting calves, and that subsequently the defendant, Johnston, in the city of Montgomery, relying on these representations by Roberts, purchased the bull from Roberts, without any express warranty of his qualities; and the jury further find that the representations by Roberts, as to the qualities of the bull, were made in good faith, these representations would not constitute a warranty of the qualities of the bull, and the fact that the bull did not come up to the representations, would constitute no defence to this action." The court refused to give the charge, and the plaintiff excepted.

D. S. Troy, for appellant.

Watts & Sons, and J. T. Holtzclaw, for appellee.—1. If any portion of the testimony objected to was legal, the court might properly overrule the objection. It was the duty of the objector to separate the illegal part, and to object to that alone. Wilson had the bull in charge, and made the

remark in Roberts' presence, and as his agent: If the language had been made use of by Roberts, it certainly would have been competent evidence.—29 Ala. 346.

2. The charge stated the law correctly. Johnston wanted the animal as a bull, and not as beef. It was a bull, and not as beef, that Roberts sold the animal. As a bull, he was useless.—Chitty Cont. p. 391–2, and note 1; ib. p. 393, and note 1; 1 Parsons' Cont. p. 462–3–4–5; Benj. on Sales, p. 543.

3. Any distinct assertion of the quality, made by the owner during the negotiation for sale, of a chattel which it may be supposed was intended to cause the sale, and did cause it, will be regarded as a warranty.—1 Parsons' Cont. 462–3; 8 Port. 133; 2 Ala. 386; Chitty Cont. pp. 393–4.

BRICKELL, C. J.—The silence of a party against whom a claim or right is asserted, is a fact which may be shown in an action for the enforcement of such claim or right; and from it the jury may infer an admission of the truth of the assertion.—*Watson v. Byers*, 6 Ala. 393; *Wheat v. Croom*, 7 Ala. 349; *Hicks v. Lawson*, 39 Ala. 90. The rule is said to rest "on that instinct of our nature, which leads us to resist an unfounded demand." The common sense of mankind is expressed in the popular phrase, *silence gives consent*, which is but another form of expressing the maxim of the law, *qui tacet consentire videtur*. The rule involves as facts on which it rests, that it is the interest or duty, of the party to whom the declaration or assertion is made, to, reply to it. If it proceeds from one having, or asserting, or authorized to assert, adverse interests or claims, it is in the ordinary course of human conduct, if the truth of the assertion is not admitted, that dissent from it should be expressed. Or, there may be circumstances under which, it would be a duty to dissent, if silence would mislead, and produce injury to others, who may rely on the truth of the assertion. The mere declarations of strangers, with whom the party has no connection, though made in his presence, may be best answered by silence, and from silence no inference against the party should be drawn. "The mere silence of one," says Mr. Greenleaf, "when facts are asserted in his presence, is no ground of presuming his acquiescence, unless the conversation were addressed to him, under such circumstances as to call for a reply."—1 Green. Ev. § 197a. In *Jelks v. McRae*, 25 Ala. 440, a slave's confession of larceny, made in the

presence of the master, and in reference to which he was silent, was held inadmissible as evidence against him. In *Fuller v. Dean*, 31 Ala. 657, which was an action of slander, the defendant offered evidence showing that prior to the speaking of the slanderous words, another person had made the same criminal charge against the plaintiff, and it was not denied. This court said: "We can see no principle on which this evidence was admissible, unless it be under the influence of the maxim, *qui tacet consentire videtur; an admission inferred from acquiescence in the verbal statements of another.* . . . Now, we do not think the charge made in this case was of a nature to call for a reply; but in the language of Mr. Greenleaf, we think it was impertinent, and best rebuked by silence."

If it is admitted that the presence of the vendor, at the time of Wilson's declaration, satisfactorily appears, we do not think the declaration was of a nature to demand any response, and consequently, that acquiescence in it, is not inferrible from silence. At best, it was but an expression of opinion as to the soundness of the animal, strengthened by an avowal of willingness to be personally responsible, or in the language employed, to guaranty its truth. Such responsibility, it is readily conceived he may have been willing to assume, and yet the vendor unwilling to incur. And the vendor may well have been indifferent whether it was assumed or not. It would be a rigid and hard rule, embarrassing sales, if a vendor was bound to answer every impertinent declaration in reference to the thing sold, made by strangers in his presence, or consent to be bound by it. Or, if he was bound by declarations made by those, having all the opportunities of knowledge he may have, and yet may not be as prudent as he is, in its commendations, or in representations of its quality, or value, or condition. Men, ordinarily are bound only by their own conduct or declarations, or the conduct or declarations of those whom they have authorized to act, or to speak for them, and not by the acts or words of mere strangers. The marked distinction between this case, and *Atwood v. Wright*, 29 Ala. 346, is, that the declarations admitted in evidence in that case, were of the auctioneer made in the presence of the vendor, and who was regarded as his agent. There is an absence of evidence having a tendency to show, that Wilson had authority to sell, or to warrant the animal, or to act or speak for the vendor. There may be a fraudulent representation without

actual declaration from the party making the contract. A tacit acquiescence in a misrepresentation made by another, the falsity of which is known, or of the truth of which, a vendor has not reasonable belief, from which he derives and intends to derive advantage, may avoid the contract, or give claim to an action for damages, as if the words had been spoken by him.—*Pilmore v. Hood*, 5 Bing. N. C. 97; Story on Sales, § 165. But he must act upon such representations, and must have knowledge that the party with whom he is dealing relies upon them:

The law is now settled in this State, in opposition to the earlier authorities, that a misrepresentation of a material fact by the vendor, on which the vendee relies, and has the right to rely, although made without a knowledge of its falsity, may constitute a fraud on the purchaser, authorizing a rescission of the contract of sale, or if there is no rescission, furnishing ground of defence to an action for the purchase-money, or may support an action on the case for deceit.—*Munroe v. Pritchett*, 16 Ala. 785; S. C. 22 Ala. 501; *Atwood v. Wright*, 29 Ala. 346; *Blackman v. Johnson*, 35 Ala. 252. This is the proposition stated in the affirmative charge of the Circuit Court. But if on the discovery of the fraud, the vendee does not rescind, or offer to rescind the contract of purchase, he cannot avoid the payment of the purchase-money *in toto*—he is entitled to a reduction of it to the extent only of the injury he has sustained. If he retains the property, he must pay its value.—*Barnett v. Stanton*, 2 Ala. 181; *Hogan v. Thorington*, 8 Port. 428; *Marshall v. Wood*, 16 Ala. 812. The error of the instruction is, when construed in connection with the evidence, that it authorized a verdict for the defendants, though there had been no rescission, and they had retained the animal which the evidence tended to show was of some value.

The charge requested was properly refused. It is doubtless true, as a general rule, that on a sale of an existing thing, which is present and open to the inspection and examination of the purchaser, there is no implied warranty of its fitness for any particular use.—*Deming v. Foster*, 42 N. H. 174. But if the vendor is informed, the vendee is purchasing the thing for a particular use, and its fitness for that use, is the element of value to the purchaser, a representation by him of its fitness is an implied, if not an express warranty.—Story on Sales, § 371. The charge also rests the responsibility of the vendor for the truth of his representa-

tions, on his good faith in making them. The principle which runs through our decisions, is the falsity of the representation, and the consequent injury to the purchaser who relies on it, however innocently it may have been made.

For the errors pointed out, the judgment must be reversed and the cause remanded.