# McCaa v. Elam Drug Co.

## *Action for the Breach of a Contract.*

1. *Implied warranty on sale of goods.*—As a general rule, to constitute an implied warranty of quality on a sale of goods or personal chattels, there must be an affirmation of fact as distinguished from a mere expression of opinion; but when a manufacturer or dealer contracts to supply an article which he makes or in which he deals, knowing that the purchaser wishes to apply it to a particular purpose, and that he necessarily trusts to his judgment or skill, there is an implied warranty on the part of the seller that the article shall be reasonably fit for the purposes to which it is to be applied.

2. *Action for breach of contract against dealer; when breach of contract shown to be relied upon and not a breach of warranty.*—In an action by one who purchased paints and oils from a dealer therein, where the complaint avers that defendant undertook and agreed to supply paints and oils of a quality such as was suitable to be used in painting the plaintiff's house, and then averred a breach of such agreement, setting out facts showing wherein the paints and oils were defective and not suitable to be used in painting the house, the complaint states a cause of action for the breach of the contract of sale, and not for the breach of an implied warranty, which was collateral

[McCaa v. Elam Drug Co.]

to the contract; and the averment that the defendant was a "dealer". in paints and oils adds nothing to the sufficiency of the complaint, nor will such averment and proof of it authorize a recovery on less evidence than if the vendor had been other than a "dealer."

3. *Same; damages; when not shown to be too remote.*—In an action by a purchaser against a seller for the breach of a contract to deliver paints of a character suitable for painting plaintiff's house, damages claimed for that there was a change of color of the paint after it begun to dry, so that the house was in a worse condition than before it was painted, and the slats of the blinds which were painted with said paint had become so gummy as to be fixed and immovable, destroying their value as blinds, are not too remote.

APPEAL from the City Court of Anniston.

Tried before the Hon. JAMES W. LAPSLEY.

This action was brought by the appellant, Addie N. McCaa, against the appellee, the Elam Drug Company, a corporation. The only question presented on the present appeal, is the ruling of the trial court upon the demurrers interposed to the complaint filed in the cause.

The complaint contained three counts, which, exclusive of the claim for special damages, which is stated in the opinion, are as follows:

"1. The plaintiff claims of the defendant the sum of five hundred dollars for this, that on or about the 31st day of October, 1894, plaintiff being the owner and occupier of a frame dwelling house in the city of Anniston, Ala., applied to the defendant, which was then a dealer in paints, oils and painters' materials, to furnish suitable paints and oils for the painting of said house; that defendant, being as aforesaid, a dealer in paints, oils and painters' materials, and knowing the purpose for which plaintiff desired said paints and oils, undertook and agreed with plaintiff to supply her with suitable paints and oils, to be used and applied in the painting of said house, and that plaintiff paid defendant the sum of sixty-four 50-100 dollars for the paints and oils so supplied; that plaintiff employed painters of reasonable skill and care to mix and apply said paints and oils to said house, and that said painters mixed and applied said paints and oils with skill and care to said house; that the oils supplied by defendant to plaintiff for the purpose aforesaid, and so used by plaintiff, was not reasonably fit for the purpose for which it was supplied, and that in consequence the paint upon said house did

[McCaa v. Elam Drug Co.]

not dry out in a reasonable time, but remained soft and sticky for a long time, to-wit, eight months, and that since said paint has begun to dry, the color thereof has changed, so that said house is in a worse condition than before it was painted as above set out, and that the slats in the blinds to the windows of said house, which were painted with said paints and oils, have become so gummy as to be fixed and immovable, utterly destroying their value as blinds of that character. That the paints and oils so furnished by defendant to plaintiff, after being mixed, were utterly worthless and unsuitable for the purpose for which they were supplied in consequence of the unsuitable quality of said oils."

"2. The plaintiff claims of the defendant the sum of five hundred dollars, for this, that on or about the 31st day of October, 1894, plaintiff being the owner and occupier of a frame dwelling house in the city of Anniston, Ala., applied to the defendant, which was then a dealer in paints, oils and painters' materials, to furnish suitable paints and oils for the painting of said house; that defendant, being as aforesaid a dealer in paints, oils and painters' materials, and knowing the purpose for which plaintiff desired said paints and oils, undertook and agreed with plaintiff to supply her with suitable paints and oils, to be used and applied in the painting of said house, and that plaintiff paid defendant the sum of sixty-four 50-100 dollars for the paints and oils so supplied, and that an examination of the paints and oils so supplied being impracticable from the nature of said articles, plaintiff relied upon the skill and judgment of defendant to furnish such article of suitable quality to be used for the purpose aforesaid; that plaintiff employed painters of reasonable skill and care to mix and apply said paints and oils to said house, and that said painters mixed and applied said paints and oils with skill and care to said house; that the oil supplied by defendant to plaintiff was not reasonably fit for the purpose for which it was supplied, and that in consequence thereof the paint upon said house did not dry out in a reasonable time, but remained soft and sticky for a long time thereafter, to-wit, eight months, and that since said paint has begun to dry out, the color thereof has changed so that said house is in a worse condition than before it was painted as above set out, and that the slats

in the blinds to the windows of said house, which were painted with said paints and oils, have become so gummy as to be fixed and immovable, utterly destroying their value as blinds of that character. That the paints and oils so furnished by defendant to plaintiff, after being mixed were utterly worthless and unsuitable for the purpose for which they were supplied in consequence of the unsuitable quality of the oils.''

''3. The plaintiff claims of the defendant the further sum of five hundred dollars, for this, that, on or about the 31st day of October, 1894, plaintiff being the owner and occupier of a frame dwelling house in the city of Anniston, Ala., applied to the defendant, which was then a dealer in paints, oils and painters' materials, to furnish the paints, painters' materials and pure raw linseed oil, to be used in the painting of said house; that defendant, being as aforesaid a dealer in paints, oils and painters' materials, and knowing the purpose for which plaintiff desired said paints, painters' materials and pure raw linseed oil, undertook and agreed with plaintiff to furnish her with said paints, painters' materials and pure raw linseed oil, to be used and applied in the painting of said house, and before the delivery of said material and oil to plaintiff she paid to defendant the sum of sixty-four 50-100 dollars, the amount of defendant's bill therefor; that an examination of the oil so furnished by defendant to plaintiff, being impracticable from the nature of the article, plaintiff relied upon the skill and judgment of defendant to supply her with pure raw linseed oil for the purpose aforesaid; that after such payment, defendant did supply to plaintiff an oil for the purpose aforesaid, but said oil so supplied was not pure raw linseed oil as defendant had contracted as above to furnish to plaintiff; that plaintiff employed painters of reasonable skill and care to mix and apply the paints and oil so furnished as aforesaid by defendant to plaintiff for the purpose of painting said house, and that said painters mixed and applied said paints and oils with reasonable skill and care to said house; that said oil so supplied by defendant to plaintiff not being pure raw linseed oil, as defendant had undertaken and agreed to supply plaintiff as aforesaid, when mixed and applied with the paints to said house as aforesaid, the paint did not dry out in a reasonable time, but remained soft and

[McCaa v. Elam Drug Co.]

sticky for a long time thereafter, to-wit, eight months, and that since said paint has begun to dry out the color thereof has changed, so that said house is in a worse condition than before it was painted, as above set out, and that the slats in the blinds to the windows of said house, which were painted with said paints and oils, have become so gummy as to be fixed and immovable, utterly destroying their value as blinds of that character. That in consequence of the oil aforesaid not being pure raw linseed oil, the paints and other material with which it was mixed for the purpose of painting said house were rendered worthless and unsuitable for said purpose.''

To each count of the complaint the defendant interposed the following grounds of demurrer: 1. The allegations of the complaint show no cause of action against the defendant. 2. It sufficiently appears that the defendant is not a manufacturer, but is a merchant, and sold the oils or paints or materials, alleged to have been purchased by the plaintiff, in the regular course of business. 3. It is not alleged that the defendant warranted that the oils, paints or materials were fit or suitable for the particular purpose for which the plaintiff desired to use them. 4. It does not appear but that the defendant, in good faith, delivered to the plaintiff the oils and paints purchased by her, and that the same were accepted and received by her. 5. It sufficiently appears from the allegations of the complaint that the defendant did deliver to the plaintiff the oils or paints or materials purchased by her, and the same were accepted by the plaintiff, without any warranty on defendant's part as to the quality or suitableness of such material. 6. The damages claimed in the complaint are too remote. 7. That it is alleged as a conclusion that it was impracticable for the plaintiff to inspect the paints and oils purchased of the defendant, but no sufficient facts are stated to enable the court to say whether or not an inspection was impracticable.

The court sustained the demurrer, and to this ruling the plaintiff excepted. From the judgment of the court sustaining the demurrer to the complaint, the plaintiff appeals, and assigns this ruling as error.

CASSADY, BLACKWELL & KEITH, for appellant.—1. The

demurrers based on the objection that the complaint does not allege an implied or express warranty originate in a misconception of the language thereof. The two first counts of said complaint charge that defendant agreed to furnish plaintiff with suitable paints and oils, &c., to paint her house, and that the material so furnished was not suitable. This is simply a failure of defendant to comply with its contract. · It does not require the aid of either an implied or express warranty under this contract to compel defendant to furnish suitable material. The obligation óf the contract is that suitable material shall be supplied and no other will suffice. A contract for the purchase of personal chattels may be so specific as to afford the purchaser as full and ample redress as he would have by an express warrant.—10 Am. & Eng. Encyc. Law, 101, n. 4. The third count is that defendant agreed to supply pure raw linseed oil, &c., and failed to do so, &c. The same argument applies to this count as to the two above.

2. Conceding now for the sake of argument that plaintiff can not recover without a warranty implied, we think the complaint sufficiently states· such a case. It alleges that defendant was a dealer in paints, oils and painters' materials, and was informed that plaintiff desired to paint her house, that defendant furnished her. said material for that purpose, and that plaintiff relied upon defendant's skill and judgment to supply said paints, &c. Here are stated all the elements necessary to constitute an implied warranty as·shown in the case of *Englehardt v. Clanton,* 83 Ala. 336. A statement in a bill of parcels for a quantity of oil that it was "winter pressed sperm oil," is an express warranty by the vendor that such oil was winter pressed.—*Osgood v. Lewis,* ·13 Am. Dec. 317. A sale of a quantity of "prime quality oil" amounts to a warranty that the article sold ·agrees with the description.—*Hastings v.· Lovering,* 13 Am. Dec. 420; *Beals v. Olmstead,* 58 Am. Dec.·150; Note ·to *Bragg v. Morrill,* 24 Am. Rep. 105; *White v. Miller,* 27 Am. Rep. 13; *Hawkins v. Pemberton,* 10 Am. Rep. 595; *Wolcott v. Mount,* 13 Am. Rep. 438; s. c., 20 Am. ·· Rep. 425.

3. An acceptance of an article by ·a vendee, where inspection is impracticable, does not disentitle him to ·sue for damages for its failure to come up to contract.—*For-*

*cheimer v. Stewart*, 54 Am. Rep. 30. Plaintiff having a right to rely according to the complaint on defendant's judgment and skill, and that it would supply proper articles, was not called on to examine the articles furnished.

. Where a count sets out several breaches, and one of the assignments is bad, the objection should be taken by motion to strike such assignment, and not, as in this case is attempted to be done, by demurrer.—*Kennon & Bro. v. West. Un. Tel. Co.*, 92 Ala. 399.

JOHN B. KNOX, *contra.*—1. The allegation that the plaintiff applied to the defendant to purchase paints, oils and painters' materials suitable to paint her house, and that defendant agreed to furnish these materials and did furnish materials, which in part, it is alleged, afterward proved unsuitable, does not, under any of the authorities, amount to an express warranty. To hold otherwise would raise an express warranty in almost every sale of chattels. Mere representations as to the quality and fitness of goods do not constitute a warranty. The purchaser takes the risk as to the quality of the article purchased, unless its quality was expressly warranted to be of a certain character.—*Wetherill v. Neilson*, 20 Pa. St. 448, 59 Amer. Dec. 741. An implied warranty in a sale of a chattel does not arise from an affirmation of soundness which proves to be unfounded. A naked averment of such a fact is neither in itself a warranty, nor sufficient evidence of one.—*McFarland v. Newman*, 9 Watts 55, 34 Amer. Dec. 497; *Dickson v. Jordan*, 11 Ired. Law, 166, 53 Amer. Dec. 405.

2. Where the goods or chattels are not sold by a manufacturer, or by sample, and are easy of access and open to inspection, in the absence of fraud in the transaction, there is no well considered case, either American or English, which has come to our attention, which exempts the purchaser from the operation of this rule of the common law; in such case there is no implied warranty as to the quality of the article, or that it is useful or suitable for the purpose for which it is purchased; and this is so notwithstanding the vendor may have knowledge of the use intended to be made of it by the purchaser. *Barnard v. Kellogg*, 10 Wall. 383; *Moses v. Mead*, 1 Denio 378, 43 Amer. Dec. 676; *Howard v. Hoey*, 23 Wend. 350,

[McCaa v. Elam Drug Co.]

35 Amer. Dec. 572; *Dickson v. Jordan*, 11 Ired. Law 166, 53 Amer. Dec. 403.

3. It is not at all material, so far as the purchaser is concerned, that a defect which afterwards develops was latent and incapable of discovery by inspection, nor that the inspection, if undertaken, would be attended with great difficulty and expense and loss of time. If he is unwilling to make the inspection and considers it unsafe to buy without one, he can protect himself by demanding a warranty; and if he fails to do so, he can not ask the law to imply one in his favor and for his protection. *Bragg v. Morrill*, 49 Vt. 45, 24 Amer. Rep. 102; *Hyatt v. Boyle*, 5 Gill & John. 110, 25 Amer. Dec. 276; *Reynolds v. Palmer*, 21 Fed. Rep. 433.

4. Nor does the doctrine of *caveat emptor* any the less apply because the goods purchased were purchased for a particular purpose, and known by the vendor to be purchased for such purpose. Notwithstanding this fact, in the absence of an express warranty, there is no implied warranty that the goods are either merchantable or suitable for the purposes for which they are purchased.—*Bartlett v. Hoppock*, 34 N. Y. 118, 88 Amer. Dec. 428; *Wright v. Hart*, 18 Wend. 449; *Deming v. Foster*, 42 N. H. 165; *Mason v. Campbell*, 15 Gratt. 572; *Kohl v. Lindley*, 39 Ill. 196; *Dickinson v. Gay*, 7 Allen 89, 83 Amer. Dec. 656; *Dounce v. Dow*, 64 N. Y. 411; *Howard v. Emerson*, 110 Mass. 320, 14 Amer. Rep. 608; *Lindley v. Hunt*, 22 Fed. Rep. 52; *Ryan v. Ulmer*, 108 Pa. St. 332, 56 Amer. Rep. 210; *Glass Works v. Keystone Coal Co.*, 5 Atl. Rep. 253; *Giroux v. Stedman*, 14 N. E. Rep. 528; *Swett v. Colgate*, 20 John. 196, 11 Amer. Dec. 266; *Kircher v. Conrad*, 9 Mont. 191, 18 Amer. St. Rep. 731; *Kingsbury v. Taylor*, 29 Me. 508, 50 Amer. Dec. 607; *Mixer v. Cobarn*, 11 Met. 559, 44 Amer. Dec. 230; *Scott v. Renick*, 1 B. Monroe 63, 35 Amer. Dec. 177; *McFarland v. Newman*, 9 Watts 55, 34 Amer. Dec. 497.

COLEMAN, J.—The plaintiff (appellant) purchased paints and oils from the defendant Drug Company, a dealer in such articles of merchandise, to be used by her in painting her dwelling house, the defendant knowing the use for which said articles were purchased. The articles were delivered to plaintiff, paid for and used. Afterwards the plaintiff discovered, as averred, that the

6

paints and oils were worthless and proved an injury to the building instead of a benefit. She sued to recover damages, claiming as special damages, the purchase money paid for the oils and paints, the amount paid to workmen for painting the house, and damage done to the building by reason of the inferior material. The liability of the defendant as set up in the complaint, was raised by demurrer.

There is no averment in either count of the complaint, that the defendant manufactured the articles sold, or perpetrated a fraud in the sale of the articles, or knew that they were unsuitable for the purposes for which they were intended. There is an averment that the defendant was a dealer in paints and oils, and knew the purposes for which they were purchased, and "undertook and agreed to supply suitable paints and oils," which he failed to do. There is also an averment that plaintiff did not know before use the quality of the materials purchased, that it was impracticable to discover the quality, and she relied upon the judgment and skill of the defendant to furnish suitable articles for painting her building. In one count it is averred that defendant "undertook and agreed to supply 'pure linseed oil,' and that the oil furnished was not pure linseed oil." The complaint nowhere avers an express warranty as to the quality of the articles purchased, nor any distinct affirmation or representation of the quality of the paints and oils.

The cause of action is based upon the averment, that the quality was inferior to that the defendant undertook and agreed to supply to plaintiff, and that they were unsuitable for the purposes intended. The liability of the defendants depends upon two questions. The first is, whether a vendor who is a dealer in certain articles of merchandise, by virtue of the fact that he is a dealer, is held to an implied warranty of the quality of the article sold, when he knows the purposes for which it is intended, and the purchaser relies upon his judgment and skill? and if not, does the common law doctrine of "*caveat emptor*" apply to a purchaser who fails to exact an express warranty, but relies upon the agreement of the vendor, to supply articles suitable for certain purposes for which he knows they are purchased, under the facts averred in the complaint? Upon this last propo-

[McCaa v. Elam Drug Co.]

sition, we think it clear, that where a vendor agrees to furnish articles of a certain kind and quality, the purchaser may refuse to receive and pay for any which do not correspond with those agreed to be furnished; but if he actually receives them and uses them, so that they cannot be returned, there being no express warranty, will the law imply a warranty, or allow the purchaser after using them to repudiate the contract? Action for breach of covenant is not an avoidance of the contract, and the suit is maintainable only upon the ground that it is founded upon the breach of a valid contract. The rule of the civil law is, "*caveat venditor*," while that of the common law is "*caveat emptor*." Under the civil law, unless the seller stipulated against a warranty, he was bound by an implied warranty of the quality of the article sold. Under the common law to hold a seller bound for the quality of the goods sold, it was necessary to require of him a warranty. It is much easier to apply the doctrine of the civil law as construed by the courts, than that of the common law as interpreted and applied in many courts, both in the United States and England. A very extended discussion, with many citations, may be found in 10 Am. & Eng. Encyc. of Law, under subject of Implied Warranty, and in Vol. 28 of same work, under subject of Warranty generally. In the case of *Barnett v. Stanton*, 2 Ala. 181, it was declared that a purchaser cannot recover for a defect in the quality of the property sold, except under special circumstances, unless he show the seller warranted the thing sold, or concealed or fraudulently represented its qualities. This principle was reaffirmed in *Armstrong v. Bufford*, 51 Ala. 410, and in the case of *Farrow v. Andrews*, 69 Ala. 96, it was declared "that in the sale of goods by one who was not shown to be a manufacturer, there was no implied warranty, that it was reasonably adapted to the purposes for which it was purchased. In such a sale, like that of any other merchandise, the law exacts from the seller only good faith and fair dealing." It is fairly inferable from the facts of the case as reported, that the plaintiffs were dealers. There is an entire absence of evidence reported in the case, to show that the purchaser informed the seller of the purposes for which the goods were intended. In *Perry v. Johnston*, 59 Ala. 648, the law is stated as follows: "It is doubtless true, as a general

rule, that on a sale of an existing thing, which is present and open to the inspection and examination of the purchaser, there is no implied warranty of its fitness for any particular use.—*Deming v. Foster*, 42 N. H. 174. But if the vendor is informed the vendee is purchasing the thing for a particular use, and its fitness for that use is the element of value to the purchaser, a representation by him of its fitness is an implied, if not an express warranty." In this case the sale was that of a Jersey bull, bought for breeding purposes. It does not appear that the seller was a dealer, and the principle announced held the vendor responsible upon a warranty because of the representation made of its suitableness, without reference to the question of fraud or deceit.

In the case of *Gachet v. Warren*, 72 Ala. 288, the appellant sold to the plaintiff two hundred and fifty bushels of "rust proof oats." The oats were delivered and paid for. The defendant seems to have been a dealer in the sale of oats, and knew the purposes for which they were purchased. The plaintiff's crop of oats failed because of rust, and he sued to recover damages upon an implied warranty. This case with others is relied upon by appellee to sustain the action of the court in sustaining his demurrer to the plaintiff's complaint. The jury found from the evidence, that the defendant agreed to sell "rust proof oats," and that the oats sold and delivered to the plaintiff were "rust proof oats." This court held, that if the defendant agreed to sell to the plaintiff a species or kind of oats known as "rust proof oats," and did sell such, there was no breach of the warranty. The effect of the decision was, that a sale of "rust proof oats" could not imply more than a warranty on the part of the dealer, that they were of the species known as "rust proof oats," and not a warranty of quality. The law is thus stated : "Where a manufacturer, or a dealer, contracts to supply an article he manufactures or produces, or in which he deals, to be applied to a particular purpose, so that the buyer necessarily trusts to the judgment or skill of the manufacturer or dealer, there is, in that case, an implied term of warranty, that it shall be reasonably fit for the purpose to which it is to be applied.—*Pacific Guano Co. v. Mullen*, 66 Ala. 582 ; Benjamin on Sales, § 157. But, if a manufacturer, or dealer, contracts to sell a known and described thing,

although he may know the purchaser intends it for a
specific use, if he delivers the thing sold, there is no im-
plied warranty, that it will answer, or is suitable for the
specific use to which the purchaser intends applying it.
*Chanter v. Hopkins*, 4 M. & W. 399; *Hoe v. Sanbone*, 21
N. Y. 552; *Bartlett v. Hoppock*, 34 N. Y. 118; *Dounce v.
Dow*, 64 N. Y. 411; *Port Carbon Iron Co. v. Groves*, 68
Penn. 149; *Gosler v. Eagle Sugar Refinery*, 103 Mass. 331;
1 Pars. Contr. 586." The word "dealer" is contained
in the quotation from Benjamin, section 157, but the
word "dealer" is not in the Alabama case, 66 Ala., *supra*,
cited, but only "manufacturer."

In the case of *Englehardt v. Clanton*, 83 Ala. 336, after
stating the rule applicable to manufacturers, it is said:
"The same rule extends to dealers in articles sold for a
special use or purpose." Citing 2 Benjamin on Sales,
§§ 988, 995; *Perry v. Johnston*, 59 Ala. *supra*. Says the
opinion: "The circumstances to an implied warranty in
such cases are, that the seller shall be a manufacturer or
dealer, shall have information of the particular use for
which the article is intended, and the purchaser trust to
the skill of the manufacturer or dealer from necessity,
or other sufficient cause, and not on his own judgment."

In the 28th Volume of Am. & Eng. Encyc. of Law, p.
757, the law is stated as follows: "If the vendee buys
an article for a particular use, which is known to the
vendor at the time, and he assures the vendee that the
'article is all right,' or uses equivalent language, his
assurance or representation amounts to a warranty that
the article is reasonably fit for the use for which the
vendee desires it; the vendee would naturally so under-
stand it, and the vendor must be presumed to have
intended it so. But when the vendor delivers goods of
the character and quality represented, the vendee can
not defend upon the ground that they are unsuitable for
the purposes for which he desired them."

The principle that a manufacturer is held to an im-
plied warranty of quality is based upon the fact that he
must know the "make-up" of the article sold by him.
The law does not presume that a mere dealer is pos-
sessed of the same information as a manufacturer, and
the same reason for the rule does not exist as to a mere
dealer.

There may be apparent exceptions in some cases, as

druggists, &c. Every vendor, whether he be a dealer or not, is responsible for his representation or affirmation as to quality, which are more than expressions of opinion and which are relied upon, and upon which the party purchasing has the right to rely. Says Mr. Benjamin (Benj. on Sales, p. 485) : ''If a man buy an article for a particular purpose made known to the seller at the time of .the contract, and rely upon the skill or judgment of the seller to supply what is wanted, there is an implied warranty that the thing sold will be fit for the desired purpose ; *aliter*, if the buyer purchases on his own judgment.'' This principle does not depend upon the fact that the vendor is a dealer, .but the warranty may arise from the character of the article and circumstances of the contracting parties, whether the seller be a dealer or not. The purchaser may have had no opportunity to examine the article, or if subject to examination and in fact examined, he may not possess the requisite information to enable him to determine. In such a case, if the vendor affirms or represents the quality of the goods, as a fact, he is bound by such representation or affirmation ; or if under such circumstances knowing the use intended, he undertakes and agrees to furnish an article, not merely in kind, but such as may be suitable for the purposes intended, he will be bound by such undertaking, whether he be a dealer or merely a seller. But if the purchaser exercises and relies upon his own judgment in the selection of the articles and purchases accordingly, there is no warranty. The complaint in the case at bar avers that the seller was a dealer in paints and oils. The complaint does not merely aver an undertaking on the part of the defendant to supply her with paint and oils, but avers that it undertook and agreed to supply paints and oils of certain qualities, to-wit, such as were suitable to be used in painting her house, and this is followed by an averment of a breach of the agreement, stating wherein they were defective. A warranty of quality by a vendor, whether expressed or implied, is collateral to the main contract. A cause of action based upon the breach of the warranty, is not the same as the cause of action founded upon the breach of the contract of sale itself. If the vendor does not deliver the article he undertook and agreed to furnish, he is guilty of a breach of his

contract, and the purchaser need not receive it; or if delivered and used, when sued, the purchaser may set up breach of contract unless he has waived his right of action for the breach; or if the article delivered, used and paid for, was of such a character, that the purchaser did not detect that it did not correspond with the article purchased, and the vendor undertook and agreed to deliver, he may then sue for breach of contract.    As we have seen, in the case, of the "rust proof oats," where the purchase is of a kind or species, a delivery of the species is a correspondence or compliance with the contract; and in the case of the Jersey bull, the species was delivered, but there was no correspondence in the quality affirmed, the defect being of such a character that it could not be detected except by the use.    The complaint in the present action is so framed, that to entitle the plaintiff to recover, she must prove the contract as laid, and the breach thereof.    She can not recover on an implied warranty.    The averment that the defendant was a "dealer" adds nothing to its sufficiency, nor will this averment and proof of it authorize a recovery on less evidence, than if the vendor had been other than a "dealer."    The complaint is for a breach of the contract of sale, and not for a breach of warranty collateral to the contract.

The second and third counts contain a statement of facts from which it may be that an implied warranty might arise, but each of the counts specifically avers a contract of sale and purchase, and the breach of the contract as distinguished from an implied warranty is counted on as the cause of action.    We construe the counts according to their legal effect, without reference to the purpose of the pleader.

The ground of demurrer that the damages sought to be recovered are too remote, apply to all the damages sued for.    Some of them clearly are not remote.    We are of opinion the court erred in sustaining the demurrer to the complaint.

Reversed and remanded.